## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TALISA BORDERS<br><br>OTISHA WOOLBRIGHT<br><br>and<br><br>STACEY LEWIS<br><br>On behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Wal-Mart Stores, Inc.,<br><br>Defendant. | CIVIL NO. 17-506-MJR-MAB<br><br><br>CLASS ACTION |

### ANSWER OF WALMART INC. TO PLAINTIFFS' AMENDED COMPLAINT

Defendant Walmart Inc.[1] ("Walmart"), through its attorneys, hereby responds to

Plaintiffs' Complaint as follows.[2]

### INTRODUCTION

### PARAGRAPH NO. 1

This case arises out of Walmart's discriminatory policies and practices concerning accommodations in the workplace for pregnant employees. Walmart's policies and practices constitute discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*., as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k). Having satisfied all administrative prerequisites, Ms. Borders, Ms. Woolbright, and Ms. Lewis file this Complaint on behalf of themselves individually and on behalf of all women similarly situated.

---

[1] On February 1, 2018, Wal-Mart Stores, Inc. changed its name to Walmart Inc.

[2] Walmart submits this Answer subject to its continuing objections to the Court's assertion of personal jurisdiction over Walmart in relation to claims brought by Plaintiffs Otisha Woolbright and Stacey Lewis.

## ANSWER NO. 1

Walmart denies the allegations of Paragraph No. 1, including, but not limited to, the allegation that Walmart engaged in discriminatory policies and practices concerning accommodations in the workplace for pregnant employees, that Plaintiffs satisfied all administrative prerequisites before filing their complaint, and that this matter may proceed as a class action.

## PARAGRAPH NO. 2

Proposed class members are current and former female employees of Walmart at stores nationwide subject to the company's pregnancy policies and practices between March 19, 2013 and around March 2014, when Walmart changed its policies.

## ANSWER NO. 2

Walmart admits that Plaintiffs purport to bring this matter as a class action consisting of current and former female employees of Walmart at stores nationwide subject to the pregnancy policies and practices of Walmart for the period beginning March 19, 2013, and ending at some time in March 2014, but denies that this action may be brought as a class action or satisfies Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION

## PARAGRAPH NO. 3

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief or other relief under any Act of Congress providing for protection of civil rights; pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States; and pursuant to 28 U.S.C. § 1337, which confers original jurisdiction upon this court in a civil action arising under any Act of Congress regulating commerce.

## ANSWER NO. 3

Walmart admits that Plaintiffs purport to bring claims arising under 28 U.S.C. § 1343(a)(4), 28 U.S.C. § 1331 and 28 U.S.C. § 1337 and that subject matter jurisdiction exists with respect to their claims.  Walmart denies that the Court has personal jurisdiction over Plaintiff Woolbright or Lewis.  Walmart further denies that Plaintiffs' allegations have any factual or legal merit.  Walmart denies the remaining allegations in Paragraph No. 3.

## PARTIES

### PARAGRAPH NO. 4

Plaintiff Talisa Borders is female and a resident and citizen of East St. Louis, Illinois.  From July 25, 2012 to April 14, 2017, she was employed by Walmart as an associate at Store 1418 in O'Fallon, Illinois.

### ANSWER NO. 4

Walmart lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Talisa Borders is a resident and citizen of East St. Louis, Illinois, and therefore denies such allegation.  Walmart admits that Talisa Borders is a female and was employed by Walmart from July 25, 2012, to April 14, 2017, as an associate at Store 1418 in O'Fallon, Illinois.

### PARAGRAPH NO. 5

Plaintiff Otisha Woolbright is female and a resident and citizen of Jacksonville, Florida.  From August 3, 2013 to January 15, 2014, she was employed by Walmart as an associate at Store 5817 in Jacksonville, Florida.

### ANSWER NO. 5

Walmart lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Otisha Woolbright is a resident and citizen of Jacksonville, Florida, and therefore denies such allegation.  Walmart admits that Otisha Woolbright is a female and was employed by Walmart from August 3, 2013, to January 15, 2014, as an associate at Store 5817 in Jacksonville, Florida.

## PARAGRAPH NO. 6

Plaintiff Stacey Lewis is female and a resident and citizen of Martinsburg, West Virginia.  From July 22, 2010 to July 2014, she was employed by Walmart as an associate at Store 1406 in Winchester, Virginia.

## ANSWER NO. 6

Walmart admits that Stacey Lewis is a female and was employed by Walmart from July 21, 2010 to July 26, 2014, as an associate at Store 1406 in Winchester, Virginia.  Walmart lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 6 and, therefore, denies them.

## PARAGRAPH NO. 7

Defendant Walmart Stores, Inc. is a Delaware corporation with its headquarters in Bentonville, Arkansas.  Walmart is a mass merchandiser of consumer products operating retail stores throughout the world.  Walmart employs more than 1.5 million associates in the United States at more than 5,000 stores and clubs nationwide.  Walmart operates roughly 290 stores in the state of Illinois alone, including the Walmart Supercenter located at 1530 W U.S. 50, O'Fallon, Illinois, 62269.  Walmart employs more than fifteen employees at each store location around the country.

## ANSWER NO. 7

Walmart admits that it is a Delaware corporation with its principal place of business in Bentonville, Arkansas.  Walmart admits it, through various subsidiaries, operates retail facilities in locations within and outside the United States.  Walmart further admits that it employs approximately 1.5 million associates in the United States and operates more than 5,000 physical Walmart retail outlets in the United States, including a Walmart Supercenter located at 1530 W U.S. 50, O'Fallon, Illinois 62269.  Walmart denies the remaining allegations of Paragraph No. 7.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

## PARAGRAPH NO. 8

On January 13, 2014, Ms. Borders filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Human

Rights Commission alleging that Walmart had engaged in systemic sex and pregnancy discrimination through its policies and practices devised and adopted at, and maintained from, corporate headquarters concerning workplace accommodations for pregnant employees, in violation of both federal and state civil rights laws.  Ms. Borders also alleged facts regarding retaliation in connection with her pregnancy and requests for accommodations.  Ms. Borders's charge tolled the charge-filing deadline, beginning March 19, 2013, for a class of all similarly situated females employed by Walmart.  Ms. Borders requested her Right to Sue letter from the EEOC within 90 days of the filing of this Complaint.

## ANSWER NO. 8

Walmart admits that Plaintiff Borders filed a charge of discrimination with the EEOC, which charge speaks for itself.  Walmart lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 8 and, therefore, denies them.

## PARAGRAPH NO. 9

On April 24, 2014, Ms. Woolbright filed a charge of discrimination with the EEOC and the Florida Commission on Human Relations alleging that Walmart had discriminated against her because of her sex (pregnancy).  Ms. Woolbright also alleged facts regarding retaliation.  Ms. Woolbright received her Right to Sue letter from the EEOC within 90 days of the filing of this Complaint.

## ANSWER NO. 9

Walmart admits that Plaintiff Woolbright filed a charge of discrimination with the EEOC and the Florida Commission on Human Relations, which charge speaks for itself.  Walmart denies the remaining allegations in Paragraph No. 9.

## PARAGRAPH NO. 10

Ms. Lewis's claims of pregnancy discrimination arise out of the same or similar discriminatory policies put forth by Walmart during the same time period as Ms. Borders and Ms. Woolbright.  As such, although she has not filed an administrative charge, her claims of discrimination relate back and are permitted to "piggyback" upon those of Ms. Borders and Ms. Woolbright.

## ANSWER NO. 10

Walmart admits that Ms. Lewis has not filed an administrative claim with the EEOC or a state agency pertaining to pregnancy discrimination while an associate at Walmart.  Walmart denies the remaining allegations in Paragraph No. 10.

## ALLEGATIONS OF REPRESENTATIVE PLAINTIFF TALISA BORDERS

### PARAGRAPH NO. 11

As described above and below, Walmart discriminated against Ms. Borders because of her sex and on the basis of pregnancy.

### ANSWER NO. 11

Walmart denies the allegations in Paragraph No. 11.

### PARAGRAPH NO. 12

While she was working at Walmart, Ms. Borders became pregnant.  Early in her pregnancy, Ms. Borders nearly slipped off a ladder she was climbing on during a shift.  Because she feared for the safety of her fetus and health of her pregnancy, she stopped climbing ladders and lifting heavy objects.  When she needed to perform these tasks, her co-workers assisted her.  Ms. Borders was able to do her job with this accommodation and planned to continue working throughout her pregnancy.  After several months of this arrangement, Crystal noticed that Ms. Borders was not using a ladder.  She told Ms. Borders that she needed to provide a note from her doctor to continue working at Walmart.

### ANSWER NO. 12

Walmart admits that while working at Walmart, Ms. Borders became pregnant.  Walmart further admits that Plaintiff Borders notified a manager that she could not lift heavy objects or climb ladders due to her pregnancy.  Walmart admits that the manager told Plaintiff Borders that she needed to submit a doctor's note to Walmart that set forth those restrictions.  Walmart lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 12 and, therefore, denies them.

### PARAGRAPH NO. 13

On or around March 19, 2013, Ms. Borders provided Crystal with a note from her doctor stating that due to Ms. Borders' pregnancy, she could not lift more than 25 pounds or climb ladders. Ms. Borders informed Walmart that she wanted to continue to work. She asked to continue the task sharing arrangement with other employees that had been working to that point. Crystal sent her to talk to Michelle in the Personnel Department and Tiffany, the Walmart Human Resources (HR) Training Coordinator, who refused her request.

<u>**ANSWER NO. 13**</u>

Walmart admits that Plaintiff Borders provided documentation from a physician regarding her pregnancy. To the extent that the allegations in Paragraph No. 13 refer to a document, Walmart refers to that document for a complete description of its content and denies any allegation inconsistent with its content. Walmart admits that Ms. Borders was directed to speak to a personnel coordinator regarding her pregnancy. Walmart denies the remaining allegations in Paragraph No. 13.

<u>**PARAGRAPH NO. 14**</u>

That same day, Tiffany told Ms. Borders that she was required to take an unpaid leave of absence. Ms. Borders asked if she could be given an accommodation that would allow her to continue to work, but Tiffany refused and told Ms. Borders that Walmart only accommodated employees with medical conditions that arose from working at Walmart (*i.e.* on-the-job injuries). Moreover, Tiffany told Ms. Borders that this policy came from Walmart District Human Resources and it was not up to the store manager to decide whether to accommodate an employee.

<u>**ANSWER NO. 14**</u>

Walmart admits that a personnel coordinator discussed possible options with Plaintiff Borders arising out of her pregnancy. Walmart denies the remaining allegations in Paragraph 14.

<u>**PARAGRAPH NO. 15**</u>

At no time after HR became involved did Walmart engage in a discussion with Ms. Borders about what accommodations might reasonably address her restrictions and allow her to continue to work, even though she had been able to perform her job by swapping some tasks with co-workers, and even though she was willing to be temporarily assigned to a different position which would not require heavy lifting or climbing.

### ANSWER NO. 15

Walmart denies the allegations in Paragraph No. 15.

### PARAGRAPH NO. 16

Walmart forced Ms. Borders to take an unpaid leave of absence beginning approximately March 19, 2013, even though her baby was not due for more than two months.  Ms. Borders gave birth on June 1, 2013, and returned to work at Walmart on July 12, 2013, six weeks after the delivery of her child.

### ANSWER NO. 16

Walmart admits that Plaintiff Borders took a leave of absence on March 18, 2013.  Walmart admits that Plaintiff Borders returned to work on or around July 12, 2013.  Walmart denies the remaining allegations in Paragraph No. 16.

### PARAGRAPH NO. 17

When Ms. Borders returned to work, Walmart refused to reinstate her to her previous associate position at pay grade 3 in the Pharmacy Department where she had been working approximately 40 hours a week at $9.05 per hour when Walmart forced her to take leave.  Instead, Walmart assigned her to a pay grade 2 associate position at $8.85 per hour and moved her to various departments, including toys.  Ms. Borders eventually accepted a cashier position paying $9.05 per hour.

### ANSWER NO. 17

Walmart admits that upon her return, Walmart extended a job offer to Plaintiff Borders for a part-time Sales Associate position at $8.85 per hour.  Walmart admits that Plaintiff Borders accepted the job offer.  Walmart admits that on or around August 2013, Walmart offered Plaintiff Borders, and she accepted, a part-time Cashier position, earning $9.05 per hour.  Walmart further admits that by August 8, 2013, Walmart had given Plaintiff Borders a pay raise to $9.45 per hour.  Walmart denies the remaining allegations in Paragraph No. 17.

### PARAGRAPH NO. 18

Ms. Borders is no longer an employee of Walmart.

### ANSWER NO. 18

Walmart admits the allegation in Paragraph No. 18.

## ALLEGATIONS OF REPRESENTATIVE PLAINTIFF OTISHA WOOLBRIGHT

### PARAGRAPH NO. 19

As described above and below, Walmart discriminated against Ms. Woolbright because of her sex and pregnancy.

### ANSWER NO. 19

Walmart denies the allegations in Paragraph No. 19.

### PARAGRAPH NO. 20

Soon after she was hired, in or around August 2013, Ms. Woolbright began experiencing pain and bleeding.  She went to the emergency room, where she learned that she was pregnant and was told that she was at a high risk for miscarriage.  When she was released from the hospital, she was given instructions, reflected on her discharge papers, that she should avoid heavy lifting.

### ANSWER NO. 20

Walmart admits that Ms. Woolbright went to a hospital emergency room in August 2013

where she was informed that she was pregnant.  Walmart lacks knowledge or information

sufficient to form a belief regarding the truth of the remaining allegations in Paragraph No. 20 and,

therefore, denies them.

### PARAGRAPH NO. 21

When Ms. Woolbright went to work in the Deli/Bakery department after being released from the hospital, she notified Ms. Blalock that she had been in the hospital because of serious health concerns about her pregnancy.  Ms. Woolbright also informed Ms. Blalock that she was directed by her doctor to avoid heavy lifting and she tried to give Ms. Blalock the paperwork from the hospital, but Ms. Blalock refused to accept it.

### ANSWER NO. 21

Walmart denies the allegations in Paragraph No. 21.

### PARAGRAPH NO. 22

In response to Ms. Woolbright telling Ms. Blalock that she was given instructions by her doctor to avoid heavy lifting, Ms. Blalock told Ms. Woolbright,

"If you can't do [heavy lifting], you can walk out those doors."  She also made a statement expressing concern that Ms. Woolbright was "a liability" and trying to "cost Walmart money."  Ms. Blalock further told Ms. Woolbright that she had seen Demi Moore do a summersault on television toward the end of her pregnancy, so pregnancy was "no excuse" for Ms. Woolbright.

### ANSWER NO. 22

Walmart denies the allegations in Paragraph No. 22.

### PARAGRAPH NO. 23

Ms. Woolbright subsequently asked another manager, Holly, about whether there was a way for her to be transferred to a cashier position because she could not do heavy lifting during her pregnancy, but Holly told her she was ineligible for a transfer because she had not yet worked for Walmart for long enough.

### ANSWER NO. 23

Walmart denies the allegations in Paragraph No. 23.

### PARAGRAPH NO. 24

The heavy lifting made Ms. Woolbright very anxious about maintaining a healthy pregnancy.  She let Ms. Blalock know that the heavy lifting was directly contrary to her physician's orders.  However, because two managers refused to accommodate Ms. Woolbright and because Ms. Blalock had threatened to terminate Ms. Woolbright if she continued to request accommodations, Ms. Woolbright had no choice but to perform heavy lifting at work, despite the health risk.

### ANSWER NO. 24

Walmart denies the allegations in Paragraph No. 24.

### PARAGRAPH NO. 25

On September 24, 2013, Ms. Woolbright was working in the store's deli. She was kneeling down and lifting heavy trays of rotisserie chickens to put them in the oven.  The trays weighed between thirty-five and fifty pounds.  Suddenly, she felt a shooting pain in her pelvic area, leg, buttocks, and back.

### ANSWER NO. 25

Walmart admits that Ms. Woolbright was working in the store's deli on September 24, 2013.  Walmart lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 25 and, therefore, denies them.

10

## PARAGRAPH NO. 26

She contacted Ms. Blalock, who told her she could go home.  She went to the hospital later that day after intense pain continued.  Ms. Woolbright feared for the safety of her fetus and health of her pregnancy.  She had to miss several days of work after the injury.

## ANSWER NO. 26

Walmart admits that Ms. Blalock informed Plaintiff Woolbright that she could leave her shift and go home.  Walmart lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 26, and, therefore, denies them.

## PARAGRAPH NO. 27

Once she had been injured on the job, and only after she returned to work, Ms. Woolbright was offered accommodations, which she had been denied before her injury.  Walmart restricted Ms. Woolbright to sedentary work with no lifting.

## ANSWER NO. 27

Walmart admits that Plaintiff Woolbright was provided an accommodation that placed limitations on the scope of work she could perform.  Walmart denies the remaining allegations in Paragraph No. 27.

## PARAGRAPH NO. 28

On January 12, 2014, Ms. Woolbright requested information concerning Walmart's policies on taking leave for childbirth in order to plan for her child's expected birth in March.

## ANSWER NO. 28

Walmart admits that Plaintiff Woolbright requested information on how to apply for a leave of absence.  Walmart lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 28, and, therefore, denies.

## PARAGRAPH NO. 29

On January 15, 2014, the next day that Ms. Woolbright was at work, Anthony Dennis, the Store Manager, interrogated Ms. Woolbright about her pregnancy and her efforts to find out about Walmart's policies related to time off

to recover from childbirth.  He told her that "Walmart will no longer be needing your services" and she was fired.

### ANSWER NO. 29

Walmart admits that Plaintiff Woolbright was terminated on January 15, 2014.  Walmart denies the remaining allegations in Paragraph No. 29.

### PARAGRAPH NO. 30

Accordingly, Ms. Woolbright was terminated because of her pregnancy and pregnancy-related accommodation needs.

### ANSWER NO. 30

Walmart denies the allegations in Paragraph No. 30.

### ALLEGATIONS OF REPRESENTATIVE PLAINTIFF STACEY LEWIS

### PARAGRAPH NO. 31

As described above and below, Walmart discriminated against Ms. Lewis because of her sex and pregnancy.

### ANSWER NO. 31

Walmart denies the allegations in Paragraph No. 31.

### PARAGRAPH NO. 32

Ms. Lewis was a longtime Walmart employee, starting her career with the Company in or around 2001 in California.  When she moved to the East Coast in 2010, she applied to and was hired on at her local Walmart.

### ANSWER NO. 32

Walmart admits that Ms. Lewis worked as a Walmart associate at Store 2242 in Anaheim, California from 2001 to 2002, at Store 3248 in La Habra, California from 2002 to 2004, at Store 2985 in Fresno, California from 2004 to 2007, at Store 4238 in Sanger, California in 2007, at Store 2985 in Fresno, California from 2007 to 2009, at Store 1406 in Winchester, Virginia from 2010 to 2014, and at Store 4423 in Martinsburg, West Virginia in 2014.  Walmart lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

No. 32 and, therefore, denies them.

## PARAGRAPH NO. 33

On or around March 4, 2013, Ms. Lewis learned that she was pregnant.  She was working as an overnight stocker in dairy/frozen foods at the time.

## ANSWER NO. 33

Walmart lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph No. 33 and, therefore, denies them.

## PARAGRAPH NO. 34

Ms. Lewis immediately informed her supervisor, Deborah, an assistant manager, as well as Debbie and Kelly in Personnel, of her pregnancy.

## ANSWER NO. 34

Walmart lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph No. 34 and, therefore, denies them.

## PARAGRAPH NO. 35

On or about March 21, 2013, Ms. Lewis was experiencing unusual bleeding and clots.  Fearing for her health and the health of her pregnancy, Ms. Lewis went to the emergency room of her local hospital.  When there, she was diagnosed with threatened miscarriage and was told she would need a lifting restriction.  The emergency room physicians recommended that Ms. Lewis see her obstetrics and gynecology physician to follow up the next day.

## ANSWER NO. 35

Based on Walmart's review of Ms. Lewis' medical records, Walmart admits that Ms. Lewis

appears to have been admitted to a hospital emergency room on March 21, 2013, in connection

with a pregnancy.  Walmart lacks knowledge or information sufficient to form a belief about the

truth of the remaining allegations in Paragraph No. 35 and, therefore, denies them.

## PARAGRAPH NO. 36

On or about March 22, 2013, Ms. Lewis saw her physician, who diagnosed her with threatened miscarriage and prescribed pelvic rest and a restriction on lifting more than 20 pounds.

### ANSWER NO. 36

Based on Walmart's review of Ms. Lewis' medical records, Walmart admits that Ms. Lewis appears to have been informed that she was diagnosed with a threatened miscarriage. Walmart lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 36 and, therefore, denies them.

### PARAGRAPH NO. 37

Ms. Lewis was still capable of working but needed to avoid heavy lifting. As such, she requested an accommodation from the overnight manager, a salaried member of management. She attempted to give the overnight manager a doctor's note but was rebuffed. She was instead told to bring the note to Personnel.

### ANSWER NO. 37

Walmart lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No 37 and, therefore, denies them.

### PARAGRAPH NO. 38

That night, however, Ms. Lewis was permitted to scan cosmetic and other small items, without having to lift heavy items off of palettes.

### ANSWER NO. 38

Walmart lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No. 38 and, therefore, denies them.

### PARAGRAPH NO. 39

At the end of her shift, which was the next morning, Ms. Lewis brought her doctor's note to Personnel, which accepted it.

### ANSWER NO. 39

Walmart lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No. 39 and, therefore, denies them.

14

**PARAGRAPH NO. 40**

Later that day, Kelly in Personnel called Ms. Lewis and told her that she could not be accommodated based on Walmart's policy and that she was required to go out on unpaid medical leave.

**ANSWER NO. 40**

Walmart lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph No. 40 and, therefore, denies them.

**PARAGRAPH NO. 41**

That same day, Ms. Lewis went back to Walmart, and received paperwork from Personnel to apply for an accommodation with the Accommodation Service Center at Walmart.  She filled out that paperwork as requested and submitted it on or about March 22, 2013.

**ANSWER NO. 41**

Walmart admits that Ms. Lewis submitted an accommodation request with the

Accommodation Service Center at Walmart on or about March 22, 2013.  Walmart lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations

in Paragraph No. 41 and, therefore, denies them.

**PARAGRAPH NO. 42**

Ms. Lewis was also given paperwork by Personnel to apply for unpaid leave under the Family and Medical Leave Act ("FMLA").

**ANSWER NO. 42**

Walmart lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph No. 42 and, therefore, denies them.

**PARAGRAPH NO. 43**

Walmart forced Ms. Lewis to take unpaid FMLA leave from on or around March 21, 2013 to on or around May 29, 2013, even though she was fully capable of working with the accommodation of avoiding heavy lifting.

**ANSWER NO. 43**

Walmart admits that Ms. Lewis took FMLA leave from March 21, 2013 to June 3, 2013.

Walmart denies the remaining allegations in Paragraph No. 43.

## PARAGRAPH NO. 44

Indeed, Ms. Lewis was also capable of doing a number of other jobs at Walmart, including working in the bakery, folding clothing, answering phones, and working in customer service.

## ANSWER NO. 44

Walmart lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph No. 44 and, therefore, denies them.

## PARAGRAPH NO. 45

During the time that Ms. Lewis was on leave, she went into Walmart periodically to ask if she could return to work in a position consistent with her medical restrictions.  Each time, she was told that she could not be accommodated.

## ANSWER NO. 45

Walmart lacks knowledge or information sufficient to form a belief regarding the truth of

the allegations in Paragraph No. 45 and, therefore, denies them.

## PARAGRAPH NO. 46

In addition, Ms. Lewis's husband, who was also employed by Walmart at the same store, also routinely asked if an accommodation was available to her, while she was on unpaid leave.

## ANSWER NO. 46

Walmart lacks knowledge or information sufficient to form a belief regarding the truth of

the allegations in Paragraph No. 46 and, therefore, denies them.

## PARAGRAPH NO. 47

Each time, he was told that there were no positions consistent with her medical restrictions available to Ms. Lewis.

## ANSWER NO. 47

Walmart lacks knowledge or information sufficient to form a belief regarding the truth of

the allegations in Paragraph No. 47 and, therefore, denies them.

## PARAGRAPH NO. 48

On or about May 15, 2013, Ms. Lewis finally received a response from Walmart's Accommodation Service Center denying her request for an accommodation.

## ANSWER NO. 48

Walmart admits that by letter dated May 15, 2013, the Accommodation Service Center

informed Ms. Lewis that her request for an accommodation had not been granted.

## PARAGRAPH NO. 49

The letter stated: "After review, we are unable to approve your request. Your request was denied because your condition is considered temporary and is not eligible for reasonable accommodation." The letter further stated: "If you are not already on leave, you will be placed on a personal leave of absence."

## ANSWER NO. 49

Walmart admits that Paragraph No. 49 contains excerpts from a letter dated May 15, 2013

and sent to Ms. Lewis by the Walmart Accommodation Service Center.

## PARAGRAPH NO. 50

Because Ms. Lewis's pregnancy and diagnosis of "threatened miscarriage" were considered to be "temporary," Walmart treated her accommodation request differently from other workers' requests for accommodation.

## ANSWER NO. 50

Walmart denies the allegations in Paragraph No. 50.

## PARAGRAPH NO. 51

On or around May 29, 2013, Ms. Lewis was cleared to return to work without restrictions by her doctor.

## ANSWER NO. 51

Walmart lacks knowledge of information sufficient to form a belief as to the truth of the allegations in Paragraph No. 51 and, therefore, denies them.

## PARAGRAPH NO. 52

Upon her return to her overnight stocking position, her co-manager Brent would hover over Ms. Lewis while she was working, and repeatedly told her that she was "too slow."

## ANSWER NO. 52

Walmart lacks knowledge of information sufficient to form a belief as to the truth of the allegations in Paragraph No. 52 and, therefore, denies them.

## PARAGRAPH NO. 53

Brent also repeatedly told Ms. Lewis, "If you can't handle your job, just go out on leave."

## ANSWER NO. 53

Walmart lacks knowledge of information sufficient to form a belief as to the truth of the allegations in Paragraph No. 53 and, therefore, denies them.

## PARAGRAPH NO. 54

These comments were hurtful and offensive to Ms. Lewis, who was working hard to support her family.

## ANSWER NO. 54

Walmart lacks knowledge of information sufficient to form a belief as to the truth of the allegations in Paragraph No. 54 and, therefore, denies them.

## PARAGRAPH NO. 55

Eventually, her husband inquired whether Ms. Lewis could be moved into a cashier role so that she would not be forced to interact with Brent, and was told that if he accepted a demotion from manager to overnight stocker, Ms. Lewis could become a cashier.

## ANSWER NO. 55

Walmart lacks knowledge of information sufficient to form a belief as to the truth of the allegations in Paragraph No. 55 and, therefore, denies them.

## PARAGRAPH NO. 56

Ms. Lewis and her husband, fearing for her health and her pregnancy, chose for her husband to accept this demotion so that Ms. Lewis could work as a cashier.

## ANSWER NO. 56

Walmart lacks knowledge of information sufficient to form a belief as to the truth of the allegations in Paragraph No. 56 and, therefore, denies them.

## PARAGRAPH NO. 57

Ms. Lewis worked until September 15, 2013, 3 days before she gave birth.

## ANSWER NO. 57

Walmart denies the allegations in Paragraph No.57.

## PARAGRAPH NO. 58

On September 18, 2013, Ms. Lewis gave birth prematurely to a stillborn child.

## ANSWER NO. 58

Based on Walmart's review of Ms. Lewis' medical records, Walmart admits that Ms. Lewis appears to have given birth to a stillborn child on September 18, 2013.

## PARAGRAPH NO. 59

Ms. Lewis is no longer an employee at Walmart.

## ANSWER NO. 59

Walmart admits the allegations in Paragraph No. 59.

## FACTS UNDERLYING CLASS CLAIMS

## PARAGRAPH NO. 60

Between some time prior to March 19, 2013 and March 2014, Walmart maintained and implemented a set of policies and practices, to which employees at

stores nationwide were subject, and which discriminated on the basis of sex by providing more favorable accommodations to non-pregnant employees than to pregnant employees similar in ability or inability to work, in violation of Title VII as amended by the PDA.

### ANSWER NO. 60

Walmart denies the allegations in Paragraph No. 60.

### PARAGRAPH NO. 61

Title VII of the Civil Rights Act of 1964 prohibits discrimination by an employer "against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act, enacted in 1978, added new meaning to Title VII's use of the word "sex." It provided that "because of sex" or "on the basis of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." Id. § 2000e(k). The PDA further provides that:

> [W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . .

*Id.*

### ANSWER NO. 61

Walmart admits that Paragraph No. 61 contains quoted excerpts from the United States Code, but denies that it has any liability under such provisions. Walmart states that Paragraph No. 61 constitutes legal conclusions to which no responsive pleading is required and, to the extent a response is necessary, Walmart denies any allegations contained in Paragraph No. 61.

### PARAGRAPH NO. 62

Many pregnant women experience physical limitations at some point during their pregnancies that impact their ability to complete job tasks associated with some positions at Walmart, including but not limited to lifting heavy objects, standing for long periods of time, squatting or stooping, and climbing ladders.

### ANSWER NO. 62

Walmart lacks knowledge or information sufficient to form a belief about the truth of the allegations to Paragraph No. 62 and, therefore, they are denied.

## PARAGRAPH NO. 63

Up until at least March 2014, including the times during which Ms. Borders, Ms. Woolbright, and Ms. Lewis were pregnant, Walmart maintained a constellation of policies and practices governing modifications and accommodations offered to employees in need of changes in the workplace due to health issues.  In creating separate categories for 1) disabilities, 2) pregnancy or other medical conditions, and 3) work-related injuries, Walmart set up a graduated system of workplace modifications that explicitly excluded pregnant employees from a wide variety of accommodations and adjustments for which non-pregnant employees, similar to pregnant employees in their ability or inability to work, were eligible.

## ANSWER NO. 63

Walmart admits that, prior to March 2014, it developed policies regarding the provision of accommodations and job modifications to certain employees for a variety of reasons.  Walmart denies the remaining allegations in Paragraph No. 63.

## PARAGRAPH NO. 64

The preamble to the August 21, 2010 Accommodation in Employment – (Medical-Related) Policy (hereinafter the "Prior Accommodation Policy") provided eligibility for workplace modifications to employees in two distinct categories:  employees with disabilities and employees with a need for accommodations arising out of pregnancy or other medical conditions.  The preamble stated that, on the one hand, "We will provide associates who have a *disability with reasonable accommodations*," and on the other hand, an associate with "a *medical condition* that is not a disability, but which prevents you from performing your job, [] may be eligible for a *job aid or environmental adjustment* under this policy." (emphasis in the original.)

## ANSWER NO. 64

To the extent that the allegations in Paragraph No. 64 refer to a document, Walmart refers to that document for a complete description of its content and denies any allegations inconsistent with its content.  Walmart denies the remaining allegations in Paragraph No. 64.

## PARAGRAPH NO. 65

The Prior Accommodation Policy and practices consistent with that policy adversely singled out pregnancy as a "medical condition" categorically ineligible for the accommodations afforded to employees with disabilities, regardless of similarity in ability or inability to work (hereinafter "the Pregnancy Exclusion").

The Pregnancy Exclusion stated that, "You may be eligible for a *job aid* or *environmental adjustment* if you are qualified for the job you hold but, because of a medical condition, including pregnancy, you need assistance to perform the essential function of your job" (emphasis added). As Walmart explained in a letter to A Better Balance dated January 10, 2014, a "*job aid* or *environmental adjustment*" meant "minor assistance, which may include use of a stool, a water bottle, or minor schedule changes." The Prior Accommodation Policy did not categorize or identify any condition, circumstance or limitation other than pregnancy as either a medical condition or a disability.

## ANSWER NO. 65

To the extent that the allegations in Paragraph No. 65 refer to documents, Walmart refers to those documents for a complete description of their content and denies any allegations inconsistent with their content. Walmart denies the remaining allegations in Paragraph No. 65.

## PARAGRAPH NO. 66

The Prior Accommodation Policy and Pregnancy Exclusion stated that the job aids and environmental adjustments available to pregnant employees *exclude*: "creating a job, removing or reducing an essential function of your job, transferring a portion of a job to another associate, light duty, or temporary alternative duty, or reassignment." Non-pregnant employees with disabilities, on the other hand, were entitled to "reasonable accommodations," *including* reassignment to an open vacant position and "[c]hanging non-essential job functions." Had Walmart allowed other employees to assist Ms. Borders, Ms. Woolbright, and Ms. Lewis with their "non-essential job functions," such as climbing ladders or lifting heavy objects, or had Walmart reassigned Ms. Borders, Ms. Woolbright, and Ms. Lewis to open vacant positions, they would not have been harmed as they were.

## ANSWER NO. 66

To the extent that the allegations in Paragraph No. 66 refer to a document, Walmart refers to that document for a complete description of its content and denies any allegations inconsistent with its content. Walmart denies the remaining allegations in Paragraph No. 66.

## PARAGRAPH NO. 67

Further treating pregnant employees as second-class citizens, Walmart's Prior Accommodation Policy and Pregnancy Exclusion required Walmart to address the needs of pregnant employees only under select circumstances. Walmart's policies and practices provided that the only modifications or adjustments available to pregnant employees were those that would be *both* "easily

achievable" and "which will have *no* negative impact on the business" (emphasis added). Non-pregnant employees with disabilities, on the other hand, were entitled to "reasonable accommodations" so long as the change would not create an "undue hardship" for the company. As a result of this disparity in its policies and practices, Walmart could deny a pregnant employee any modifications she needed to continue working and maintain a healthy pregnancy even if the adjustments would mean only a *de minimis* cost to Walmart. These flimsy protections for pregnant employees stood in sharp contrast to the robust protections afforded to non-pregnant employees with disabilities.

## ANSWER NO. 67

To the extent that the allegations in Paragraph No. 67 refer to a document, Walmart refers to that document for a complete description of its content and denies any allegations inconsistent with its content. Walmart denies the remaining allegations in Paragraph No. 67.

## PARAGRAPH NO. 68

Because pregnancy was the only physical condition explicitly excluded from the full panoply of accommodations available under the Prior Accommodation Policy, an employee with any other medical condition was eligible for the fuller range of accommodations if the condition "substantially limit[ed] one or more major life activities." Pregnancy, however, was unique among physical conditions under the Prior Accommodation Policy in that, by its terms, *regardless* of whether a pregnant employee was substantially limited in one or more major life activities as a result of her pregnancy, only the limited categories of job aids or environmental adjustments were available, and even those modifications had to be easily achievable and without a negative impact on Walmart. This differential treatment, not based on ability to work, but rather on pregnancy alone, violates Title VII as amended by the PDA.

## ANSWER NO. 68

To the extent that the allegations in Paragraph No. 68 refer to a document, Walmart refers to that document for a complete description of its content and denies any allegations inconsistent with its content. Further answering, Paragraph No. 68 contains legal conclusions to which no response is required. To the extent that a response is required, Walmart denies the remaining allegations in Paragraph No. 68.

## PARAGRAPH NO. 69

23

Walmart also provided accommodations for a third category of employees with limitations, as outlined in a separate document governing modifications for employees injured on the job.  That policy, dated April 13, 2012, and titled Associate Work-Related Injury Policy (SA-01) (hereinafter the "Temporary Alternative Duty Policy"), stated that employees who were injured on the job may be offered temporary alternative duty.  In contrast to the modifications that Walmart made available to employees with limitations arising out of pregnancy, the Temporary Alternative Duty Policy was readily offered to employees injured on the job.  Ms. Woolbright's experience exemplified this disparity—Walmart refused to honor lifting restrictions while she was pregnant, but once she suffered an on-the-job injury, Walmart restricted her lifting duties.  This differential treatment, not based on ability to work, but rather on pregnancy alone, violates Title VII as amended by the PDA.

## ANSWER NO. 69

To the extent that the allegations in Paragraph No. 69 refer to a document, Walmart refers to that document for a complete description of its content and denies any allegations inconsistent with its content.  Further answering, Paragraph No. 69 contains legal conclusions to which no response is required.  To the extent that a response is required, Walmart denies the allegations in Paragraph No. 69.

## PARAGRAPH NO. 70

These policies and practices provide direct evidence of intentional discrimination under the PDA.  Walmart's constellation of policies and practices in effect until at least March 2014 constituted a facial and categorical exclusion of pregnant employees from accommodations available to many non-pregnant employees similar in ability or inability to work.

## ANSWER NO. 70

Paragraph No. 70 contains legal conclusions to which no response is required.  To the extent that a response is required, Walmart denies them.

## PARAGRAPH NO. 71

Under these policies and practices, pregnant employees were neither eligible for nor offered modifications that imposed any cost or inconvenience on Walmart whatsoever, even though many employees with disabilities or on-the-job injuries were eligible for and offered such modifications.

## ANSWER NO. 71

Walmart denies the allegations in Paragraph No. 71.

## PARAGRAPH NO. 72

For example, Walmart refused to accommodate Ms. Borders, who was pregnant, when she requested job modifications with regard to lifting heavy boxes and climbing ladders, but Walmart accommodated other employees at the same store who needed accommodations due to non-pregnancy-related conditions, including an employee who had trouble moving her neck and employees who had trouble standing for long periods of time.  Likewise, Ms. Woolbright received the lifting restriction she had needed and requested due to her pregnancy only *after* she was injured on the job.

## ANSWER NO. 72

Walmart lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No. 72 and, therefore, they are denied.

## PARAGRAPH NO. 73

Even if the Pregnancy Exclusion is not considered direct evidence of discrimination, Walmart's policies and practices demonstrate intentional discrimination on the basis of pregnancy.  Under its constellation of policies and practices, Walmart accommodated a large percentage of non-pregnant employees with physical limitations but failed to accommodate a large percentage of pregnant employees with physical limitations arising out of pregnancy.  This is true because pregnant employees were categorically excluded from the broader modifications and reasonable accommodations afforded to non-pregnant employees with disabilities and/or on-the-job injuries.  Regardless of any legitimate, non-discriminatory reason proffered by Walmart, this differential treatment imposed a significant burden on pregnant employees, thus demonstrating that Walmart intentionally discriminated on the basis of pregnancy.

## ANSWER NO. 73

Paragraph No. 73 contains legal conclusions to which no response is required.  To the extent that a response is required, Walmart denies the allegations contained within Paragraph No. 73.

## PARAGRAPH NO. 74

In the alternative, the policies and practices had a discriminatory impact on pregnant employees that was not justified by any business necessity.  According to

the U.S. Bureau of Labor Statistics based on logs maintained by employers recording data required by federal law, in 2013 approximately 1% of full-time equivalent retail workers suffered on-the-job injuries resulting in "job transfer or restriction."  See BLS News Release, Employer-Reported Workplace Injuries and Illnesses -2013 (Dec. 4, 2014), Table 1, at https://www.bls.gov/news.release/archives/osh_12042014.pdf (last visited May 5, 2017) (providing statistics by industry); BLS, Ch. 9, Occupational Safety and Health Statistics, at 5-15, at https://www.bls.gov/opub/hom/pdf/homch9.pdf (last visited May 5, 2017) (describing survey methodology).  In 2014, Walmart had about 1.2 million employees in the United States.  Walmart, 2014 Enhanced Digital Annual Report, at http://www.corporatereport.com/walmart/2014/ar/walmartUS.html (last visited May 5, 2017).  Extrapolating this data to Walmart, during the approximately one-year Relevant Time Period, about 12,000 Walmart employees were transferred or worked under job restrictions because of on-the-job injuries.  By contrast, under Walmart's Prior Accommodation Policy and Pregnancy Exclusion, and practices consistent with those policies, no pregnant women would have been transferred or had their job duties restricted because of pregnancy, unless, like Ms. Woolbright, they suffered an injury while performing their unaccommodated job duties and thus received accommodations under a different policy for employees injured on the job.

### ANSWER NO. 74

Walmart lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph No. 74 and, therefore, they are denied.

### PARAGRAPH NO. 75

According to the U.S. Bureau of Labor Statistics based on annual average data obtained from the Current Population Survey (CPS), which obtains data each month from about 60,000 households, in 2014 persons with a disability constituted about 3.4% of all employees in the nation.  BLS News Release, Persons with a Disability:  Labor Force Characteristics – 2015 (June 21, 2016), Table A at https://www.bls.gov/news.release/pdf/disabl.pdf (last visited May 5, 2017) (calculated by dividing the estimated number of disabled employees (4,985,000) by the estimated number of employees (4,985,000 + 141,320,000)).  Extrapolating this data to Walmart, during the Relevant Time Period it employed approximately 40,800 disabled persons, many of whom would have required accommodations.  By contrast, under Walmart's Prior Accommodation Policy and Pregnancy Exclusion, and practices consistent with those policies, no women would have been accommodated unless any minor modifications would have imposed no cost or inconvenience on Walmart whatsoever.  As discussed below, data suggest that thousands of pregnant women requested and were denied accommodations by Walmart during the Relevant Time Period.

### ANSWER NO. 75

Walmart lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No. 75 and, therefore, they are denied.

## PARAGRAPH NO. 76

In or around March 2014, just weeks after Ms. Borders filed her charge with the EEOC, Walmart announced changes to its accommodations policy (hereinafter the "Current Accommodation Policy"). The Current Accommodation Policy defines disability to include "a temporary disability caused by pregnancy."

## ANSWER NO. 76

Walmart admits that it issued an Accommodation in Employment- (Medical-Related) Policy on or around March 2014. To the extent that the allegations in Paragraph No. 76 refer to a document, Walmart refers to that document for a complete description of its contents and denies any allegations inconsistent with its contents. Walmart denies the remaining allegations in Paragraph No. 76.

## PARAGRAPH NO. 77

In practice, and by design, the Current Accommodation Policy is regularly applied in practice to refuse accommodations to pregnant employees who have physical limitations arising out of a pregnancy that do not constitute a "disability," despite similar accommodations being afforded to other employees similar in their ability or inability to work, including employees with on-the-job injuries who do not have a "disability." Accordingly, Walmart is still discriminating against pregnant employees under Title VII as amended by the PDA. However, this Complaint concerns only damages for injuries resulting from Walmart's Prior Accommodation Policy.

## ANSWER NO. 77

Walmart denies the allegations in Paragraph No. 77.

## CLASS ACTION ALLEGATIONS

*Class seeking relief under the Prior Accommodation Policy and Pregnancy Exclusion*

## PARAGRAPH NO. 78

Ms. Borders, Ms. Woolbright, and Ms. Lewis incorporate by reference the allegations set forth in the above paragraphs.

### ANSWER NO. 78

Walmart incorporates by reference its responses to Paragraph Nos. 1–77.

### PARAGRAPH NO. 79

Ms. Borders, Ms. Woolbright, and Ms. Lewis bring this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following class seeking monetary relief under the constellation of Walmart's prior policies and practices (hereinafter "Prior Policy Class"):

> All females employed by Walmart at stores nationwide who were denied requested accommodations because of pregnancy between March 19, 2013 and the implementation of the Current Accommodation Policy (the "Relevant Time Period under the Prior Accommodation Policy"), other than managerial employees and employees in Walmart's law and human resources departments.

### ANSWER NO. 79

Walmart admits that Plaintiffs purport to bring this action on behalf of themselves, and as a class action, with a proposed class definition as set forth in Paragraph No. 79. Walmart denies that this matter may be properly maintained as a class action under Fed. Civ. P. 23 and denies the remaining allegations in Paragraph No. 79.

### PARAGRAPH NO. 80

Ms. Borders, Ms. Woolbright, and Ms. Lewis are members of the Prior Policy Class they seek to represent.

### ANSWER NO. 80

Walmart lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 80 and, therefore, they are denied. Walmart denies that this matter may be properly maintained as a class action under Fed. Civ. P. 23 and denies the remaining allegations in Paragraph No. 80.

### PARAGRAPH NO. 81

The proposed members of the Prior Policy Class identified herein are so numerous that joinder of all members is impracticable. During the Relevant Time Period under the Prior Accommodation Policy, Walmart employed about 1,200,000

employees.  According to an expert report in prior litigation against Walmart, about 65 percent of hourly employees at Walmart are women, while roughly 33 percent of management employees are women.  It is reasonable to believe that overall about 60% of Walmart employees are women.  *Dukes v. Walmart Stores, Inc.*, 222 F.R.D. 137, 146 (N.D. Cal. June 16, 2004).  As a result, it is likely that approximately 720,000 of Walmart's employees during the Relevant Time Period were women. Women are of childbearing age (18 to 50) for about 2/3 of a normal working career (to age 65), and hence about 480,000 employees were of childbearing age. According to the Center for Disease Control, about 10% of women of childbearing age become pregnant each year in the United States.  Consequently, it is likely that about 48,000 Walmart employees became pregnant during the Relevant Time Period.

### ANSWER NO. 81

Walmart lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 81 and, therefore, they are denied. Walmart denies that this matter may be properly maintained as a class action under Fed. R. Civ. P. 23 and denies the remaining allegations in Paragraph No. 81.

### PARAGRAPH NO. 82

Only Walmart's own records will reveal the actual number of pregnant employees who were denied requested accommodations, but a recent survey suggests that the number probably exceeded 20,000.  In a survey of over 1,000 women who gave birth to single babies in U.S. hospitals from July 2011 through June 2012, the respondents reported as follows:

| **Type of Accommodation** | **% Needing** | **% Requested** | **% Requested Who Were Denied** |
|---|---|---|---|
| More frequent breaks | 71% | 58% | 5% |
| Change in duties (e.g., less lifting, more sitting) | >50% | 63% | 9% |
| Change in schedule | >50% | 74% | 9% |
| Other accommodation | 40% | 62% | 13% |

National Partnership for Women & Families, Listening to Mothers:  The Experiences of Expecting and New Mothers in the Workplace (Jan. 2014), at http://www.nationalpartnership.org/research-library/workplace-fairness/pregnancy-discrimination/listening-to-mothers-experiences-of-expecting-and-new-mothers.pdf.  If pregnant employees at Walmart needed, requested, and were denied accommodations at the survey averages, there are at least several

thousand members of the Prior Policy Class.  Thus, there are far too many potential class members, who are scattered all across the country, to be reasonably joined.

## ANSWER NO. 82

Walmart lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 82 and, therefore, they are denied. To the extent that the allegations in Paragraph No. 82 refer to a document, Walmart refers to that document for a complete description of its contents and denies any allegations inconsistent with its contents. Walmart denies that this matter may be properly maintained as a class action under Fed. R. Civ. P. 23 and denies the remaining allegations in Paragraph No. 82.

## PARAGRAPH NO. 83

Questions of law and fact are common to the Prior Policy Class, and these questions predominate over any questions that may affect only individual class members.  The proposed class is particularly cohesive because it pertains to a very specific set of policies and practices adopted by corporate and senior management and applicable to employees at stores nationwide.  Questions of law and fact that are common to all members of the Prior Policy Class are:  (1) whether the Pregnancy Exclusion's consignment of pregnancy to the category of "medical condition," thereby limiting the types of accommodations available to pregnant employees, is facially discriminatory; (2) whether pregnant employees, who were denied the full range of accommodations, were similar in their ability or inability to work compared to other employees offered a fuller range of accommodations; (3) whether Walmart denied pregnant employees certain forms of accommodations available to other employees, similar in their ability or inability to work, on the basis that it would be too costly or inconvenient for Walmart to provide accommodations to pregnant employees; (4) whether the Prior Accommodation Policy and Pregnancy Exclusion accommodated a large percentage of non-pregnant employees but denied accommodations to a large percentage of pregnant employees; (5) whether the Prior Accommodation Policy and Pregnancy Exclusion imposed a significant burden on pregnant employees that outweighs any legitimate, non-discriminatory reason proffered by Walmart; (6) whether the Prior Accommodation Policy and Pregnancy Exclusion had a statistically significant adverse impact on pregnant employees and thus women; and (7) whether Walmart had a business need to adopt the Prior Accommodation Policy and Pregnancy Exclusion.

## ANSWER NO. 83

The allegations in Paragraph No. 83 are legal conclusions to which no response is required. To the extent a response is required, Walmart denies the allegations in Paragraph No. 83. Walmart denies that this matter may be properly maintained as a class action under Fed. R. Civ. P. 23 and denies the remaining allegations in Paragraph No. 83.

## PARAGRAPH NO. 84

These common questions can be answered with common proof, including but not limited to: (a) the existence of discriminatory, written policies and practices applicable to employees at stores nationwide; (b) training materials provided to human resource employees and managers about the application of those policies and practices, (c) statistical evidence of disparities adverse to pregnant employees and thus women resulting from these common policies and practices; and (d) the use of common experts.

## ANSWER NO. 84

The allegations in Paragraph No. 84 are legal conclusions to which no response is required. To the extent a response is required, Walmart denies the allegations in Paragraph No. 84. Walmart denies that this matter may be properly maintained as a class action under Fed. R. Civ. P. 23 and denies the remaining allegations in Paragraph No. 84.

## PARAGRAPH NO. 85

The claims of Ms. Borders, Ms. Woolbright, and Ms. Lewis are typical of the claims of the Prior Policy Class. Specifically, Ms. Borders, Ms. Woolbright, and Ms. Lewis were pregnant during the Relevant Time Period under the Prior Accommodation Policy and Pregnancy Exclusion; they have been subjected to and damaged by company-wide policies and practices of sex and pregnancy discrimination in employment; their claims are based upon allegations that they have been adversely affected by those policies and practices in that they received less favorable treatment with respect to workplace accommodations than their male and non-pregnant counterparts similar in their ability or inability to work; and their claims rest on proof and legal theories common to all proposed class members.

## ANSWER NO. 85

The allegations in Paragraph No. 85 are legal conclusions to which no response is required. To the extent a response is required, Walmart denies the allegations in Paragraph No. 85. Walmart

denies that this matter may be properly maintained as a class action under Fed. R. Civ. P. 23 and

denies the remaining allegations in Paragraph No. 85.

## PARAGRAPH NO. 86

Ms. Borders, Ms. Woolbright, and Ms. Lewis, as Representative Plaintiffs, will fairly and adequately represent and protect the interests of the members of the Prior Policy Class because: (1) they are willing and able to represent the proposed class and have every incentive to pursue this action to a successful conclusion; (2) their interests are not antagonistic to those of the other class members; and (3) they are represented by counsel experienced in litigating major class actions in the field of employment discrimination.

## ANSWER NO. 86

The allegations in Paragraph No. 86 are legal conclusions to which no response is required.

To the extent a response is required, Walmart lacks knowledge or information sufficient to form a

belief regarding the truth of the allegations contained in Paragraph No. 86 and, therefore, denies

them. Walmart denies that this matter may be properly maintained as a class action under Fed. R.

Civ. P. 23 and denies the remaining allegations in Paragraph No. 86.

## PARAGRAPH NO. 87

Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Prior Policy Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The class members have been damaged and are entitled to recovery as a result of Walmart's common, uniform, and discriminatory policies and practices.  Further, the class members were subjected to the same company-wide policies and practices of sex and pregnancy discrimination and, therefore, requiring each class member to pursue her claim individually would result in needless duplication of proof and would waste the resources of both the parties and the judiciary.  Finally, monetary relief would be easily calculable for the financial injuries suffered by Prior Policy Class members, consisting of the number of days of work missed because of Walmart's failure to accommodate their pregnancy times their pay rates, plus any lost wages after their pregnancies, such as those experienced by Ms. Borders, Ms. Woolbright, and Ms. Lewis.

## ANSWER NO. 87

32

The allegations in Paragraph No. 87 are legal conclusions to which no response is required. To the extent a response is required, Walmart denies the allegations in Paragraph No. 87. Walmart denies that this matter may be properly maintained as a class action under Fed. R. Civ. P. 23 and denies the remaining allegations in Paragraph No. 87.

## CAUSES OF ACTION

## COUNT I

## INTENTIONAL DISCRIMINATION ON THE BASIS OF SEX
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*,
as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)
(On Behalf of Ms. Borders, Ms. Woolbright, Ms. Lewis, and the Prior Policy Class)**

## PARAGRAPH NO. 88

On behalf of themselves and the Prior Policy Class, Ms. Borders, Ms. Woolbright, and Ms. Lewis incorporate by reference the allegations set forth throughout this Complaint.

## ANSWER NO. 88

Walmart incorporates by reference its responses to Paragraph Nos. 1–87.

## PARAGRAPH NO. 89

Ms. Borders, Ms. Woolbright, Ms. Lewis, and members of the Prior Policy Class are female and are, or were, employees of Walmart at stores nationwide within the meaning of 42 U.S.C. §2000e *et seq.* and thus are members of a protected class.

## ANSWER NO. 89

Walmart admits that Plaintiff Borders, Plaintiff Woolbright and Plaintiff Lewis are former employees of Walmart. Further, Walmart lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 89 and, therefore, they are denied.

## PARAGRAPH NO. 90

Walmart's Prior Accommodation Policy and Pregnancy Exclusion, as set forth herein, and practices consistent with those policies, denied Ms. Borders, Ms.

Woolbright, Ms. Lewis, and members of the Prior Policy Class their right to equal employment opportunity in violation of Title VII and the PDA's requirement that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ." 42 U.S.C. § 2000e(k).

### ANSWER NO. 90

Paragraph No. 90 contains legal conclusions to which no response is required.  To the extent a response is required, Walmart denies the allegations contained within Paragraph No. 90.

### PARAGRAPH NO. 91

Walmart's Prior Accommodation Policy and Pregnancy Exclusion constitute direct evidence of intentional discrimination against pregnant employees in that Walmart adopted, implemented, and maintained uniform employment policies and practices that singled out pregnancy on their face and categorically excluded pregnant employees from eligibility for the same accommodations that similarly situated non-pregnant employees could enjoy, thereby demonstrating intent to discriminate against pregnant employees.

### ANSWER NO. 91

Paragraph No. 91 contains legal conclusions to which no response is required.  To the extent a response is required, Walmart denies the allegations contained within Paragraph No. 91.

### PARAGRAPH NO. 92

Alternatively, even if Walmart's Prior Accommodation Policy and Pregnancy Exclusion are not considered direct evidence of intentional discrimination, they were nonetheless *prima facie* discriminatory because, pursuant to these policies and practices, Walmart refused to accommodate pregnant employees but accommodated other non-pregnant employees, despite their similarity in ability or inability to work.  The Prior Accommodation Policy and Pregnancy Exclusion, and practices consistent with those policies, imposed a significant burden on pregnant employees, in that Walmart provided a full range of accommodations to a large percentage of non-pregnant employees in need of accommodations while failing to provide those same accommodations to a large percentage of, or any, pregnant employees in need of accommodations unless Walmart first caused them injury while on the job.  Walmart did not have a legitimate, non-discriminatory reason for treating pregnant and non-pregnant employees differently in this way, but even if Walmart was able to present such a reason, the significant burden imposed outweighs that reason.

### ANSWER NO. 92

Paragraph No. 92 contains legal conclusions to which no response is required.  To the extent a response is required, Walmart denies the allegations contained within Paragraph No. 92.

### PARAGRAPH NO. 93

Walmart's discriminatory policies and practices caused Ms. Borders, Ms. Woolbright, Ms. Lewis, and members of the Prior Policy Class to suffer injury, including but not limited to, loss of wages and other job benefits, and emotional and physical distress.

### ANSWER NO. 93

Walmart denies the allegations in Paragraph No. 63.

### PARAGRAPH NO. 94

On behalf of themselves and the Prior Policy Class, Ms. Borders, Ms. Woolbright, and Ms. Lewis request monetary relief as provided in the Prayer for Relief below.

### ANSWER NO. 94

Walmart admits that Plaintiffs request relief as provided in their Prayer for Relief below but denies that Plaintiffs are entitled to any relief whatsoever.

### COUNT II

### DISPARATE IMPACT DISCRIMINATION ON THE BASIS OF SEX
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*,
as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)
(On Behalf of Ms. Borders, Ms. Woolbright, and the Prior Policy Class)**

### PARAGRAPH NO. 95

On behalf of themselves and the Prior Policy Class, Ms. Borders, Ms. Woolbright, and Ms. Lewis incorporate by reference the allegations set forth throughout this Complaint.

### ANSWER NO. 95

4Walmart incorporates by reference its responses to Paragraph Nos. 1–95.

### PARAGRAPH NO. 96

Walmart's Prior Accommodation Policy and Pregnancy Exclusion constitute disparate impact discrimination against female employees in that

Walmart adopted, implemented, and maintained uniform employment policies and practices that categorically excluded pregnant employees from eligibility for the same accommodations that similarly situated non-pregnant employees could enjoy, and thus female employees were disproportionately denied accommodations and excluded.  The policies and practices had a discriminatory impact on pregnant employees, and thus women, which was not justified by any business necessity.

## ANSWER NO. 96

Paragraph No. 96 contains legal conclusions to which no response is required. To the extent a response is required, Walmart denies the allegations contained within Paragraph No. 96.

## PARAGRAPH NO. 97

Walmart's discriminatory policies and practices caused Ms. Borders, Ms. Woolbright, Ms. Lewis and members of the Prior Policy Class to suffer injury, including but not limited to, loss of wages and other job benefits, and emotional and physical distress.

## ANSWER NO. 97

Walmart denies the allegations in Paragraph No. 97.

## PARAGRAPH NO. 98

On behalf of themselves and the Prior Policy Class, Ms. Borders, Ms. Woolbright, and Ms. Lewis request monetary relief as provided in the Prayer for Relief below.

## ANSWER NO. 98

Walmart admits that Plaintiffs request relief as provided in their Prayer for Relief below but denies that Plaintiffs are entitled to any relief whatsoever.

## COUNT III

## EMPLOYMENT DISCRIMINATION – RETALIATION
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3
### (On behalf of Ms. Borders and Ms. Woolbright individually)

## PARAGRAPH NO. 99

Ms. Borders and Ms. Woolbright incorporate by reference the allegations set forth throughout this Complaint.

## ANSWER NO. 99

Walmart incorporates by reference its responses to Paragraph Nos. 1–98.

## PARAGRAPH NO. 100

After Ms. Borders provided Walmart a note from her doctor disclosing her pregnancy and setting forth her resulting physical restrictions, she requested modifications from both her manager in the Pharmacy Department and the Human Resources Training Coordinator, constituting protected activity pursuant to 42 U.S.C. § 2000e-3.

## ANSWER NO. 100

Walmart denies the allegations in Paragraph No. 100.

## PARAGRAPH NO. 101

Immediately after Ms. Borders requested appropriate modifications, Walmart retaliated by forcing her to take an unpaid leave of absence despite her request to continue working during her pregnancy.  Walmart did not engage Ms. Borders in any discussion about what modifications would address her restrictions. Rather, Walmart forced Ms. Borders to take unpaid leave for over two months before she gave birth.

## ANSWER NO. 101

Walmart denies the allegations in Paragraph No. 101.

## PARAGRAPH NO. 102

Walmart continued to retaliate against Ms. Borders after she returned to work following the birth of her child.  Walmart refused to reinstate her in the Pharmacy Department, but rather repeatedly moved Ms. Borders around the store to different departments.  In addition, Walmart refused to pay her the same wage she had received before she became pregnant and requested modifications.

## ANSWER NO. 102

Walmart denies the allegations contained within Paragraph No. 102.

## PARAGRAPH NO. 103

Ms. Woolbright's request on January 12, 2014, for information concerning Walmart's policies on taking leave for childbirth constituted protected activity pursuant to 42 U.S.C. § 2000e-3.

## ANSWER NO. 103

Paragraph No. 103 contains legal conclusions to which no response is required. To the extent a response is required, Walmart denies the allegations contained within Paragraph No. 103.

### PARAGRAPH NO. 104

Walmart fired her the day after she made this inquiry about information concerning Walmart's policies on taking leave for childbirth. The firing was in retaliation for the accommodation requests she had made earlier in her pregnancy, the accommodations that she had received under temporary alternative duty, and her inquiry about leave.

### ANSWER NO. 104

Walmart denies the allegations in Paragraph No. 104.

### PARAGRAPH NO. 105

Ms. Borders and Ms. Woolbright suffered injuries as a direct and proximate result of Walmart's retaliatory conduct, including loss of income, emotional distress, and humiliation.

### ANSWER NO. 105

Walmart denies the allegations in Paragraph No. 105.

### PARAGRAPH NO. 106

Ms. Borders and Ms. Woolbright request relief as provided in the Prayer for Relief below.

### ANSWER NO. 106

Walmart admits that Plaintiffs request relief as provided in their Prayer for Relief below but denies that Plaintiffs are entitled to any relief whatsoever.

### PRAYER FOR RELIEF

The remainder of the Complaint constitutes Plaintiffs' request for relief to which no responsive pleading is necessary. To the extent a responsive pleading is required, Defendant denies that Plaintiffs are entitled to the relief sought.

All allegations that have not been specifically admitted are hereby denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs lack standing to assert the claims for relief purportedly alleged in Plaintiffs' Complaint.

### Second Affirmative Defense

Plaintiffs' Complaint is barred because Plaintiffs cannot satisfy all requirements for maintaining a class action under Federal Rule of Civil Procedure 23.

### Third Affirmative Defense

In light of this Court's Order on March 29, 2018, Walmart re-assert and preserves that the Court does not have personal jurisdiction over Walmart with respect to the claims of Plaintiff Woolbright.

### Fourth Affirmative Defense

In light of this Court's Order on March 29, 2018, Walmart re-assert and preserves that the Court does not have personal jurisdiction over Walmart with respect to the claims of Plaintiff Lewis.

### Fifth Affirmative Defense

Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

### Sixth Affirmative Defense

Plaintiffs' and putative class members' claims against Walmart are barred because Walmart has complied with all applicable regulations of pertinent authorities.

### Seventh Affirmative Defense

Plaintiffs' claims are barred because they have not exhausted their administrative remedies.

### Eighth Affirmative Defense

Plaintiffs' and putative class members' claims are barred in whole or in part because Defendant had legitimate, non-discriminatory, non-retaliatory, non-pretextual reasons for all decisions with respect to Plaintiffs and the putative class members.

### Ninth Affirmative Defense

Plaintiffs' claims are barred in whole or in part because Plaintiffs failed to mitigate their damages.

### Tenth Affirmative Defense

Plaintiffs' claims are barred in whole or in part because, to the extent Defendant committed any acts or omissions with regard to Plaintiffs or the putative class members with discriminatory motives, Defendant would have committed the same acts or omissions in any event for legitimate, non-discriminatory, non-retaliatory, non-pretextual reasons.

### Eleventh Affirmative Defense

Plaintiffs' claims are barred in whole or in part because they are outside the scope of their administrative charges.

Walmart gives notice that it intends to rely on other affirmative defenses as they may become available or apparent during the course of discovery and reserves the right to amend its Answer to assert those defenses.

February 12, 2019                                  Respectfully Submitted,


                                                   By:  /s/ Andrew G. Klevorn
                                                        Andrew G. Klevorn

                                                   Andrew G. Klevorn
                                                   Stacey McKee-Knight
                                                   Andrew J. Demko
                                                   Abimbola O. Oladokun
                                                   Laura D. Waller
                                                   KATTEN MUCHIN ROSENMAN LLP
                                                   525 West Monroe Street, Suite 1900
                                                   Chicago, Illinois 60661
                                                   Firm No. 41832
                                                   Ph:  (312) 902-5200

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 12, 2019, I caused a true and correct copy of the foregoing to be served upon counsel of record via the ECF system.

February 12, 2019

                            /s/ Andrew G. Klevorn