## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TALISA BORDERS, | ) | |
| OTISHA WOOLBRIGHT, and | ) | |
| STACEY LEWIS, | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | Civil No. 3:17-cv-0506 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| WAL-MART INC., | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASSES, APPOINTMENT OF THE PLAINTIFFS AS CLASS REPRESENTATIVES, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................... 1

       A.     Plaintiffs Thoroughly Investigated the Class Claims and Exhausted Administrative
              Remedies ............................................................................................................ 1

       B.     The Parties Engaged in Years of Adversarial Litigation of the Class Claims,
              Allowing Them to Better Assess the Strengths and Weakness of the Claims and
              Defenses .............................................................................................................. 3

       C.     The Parties Engaged in Arm's-Length Negotiations of the Class Claims with the
              Assistance of a Well-Respected Mediator ......................................................... 5

III.   SUMMARY OF THE SETTLEMENT AGREEMENT PROVISIONS ............. 6

       A.     Definition of the Settlement Classes ................................................................. 6

       B.     Notice to Class Members and Final Fairness Hearing ...................................... 7

       C.     Settlement Fund and Claims Administrator ....................................................... 8

       D.     Confidentiality of Claim Form .......................................................................... 8

       E.     Attorneys' Fees and Expenses ........................................................................... 9

IV.    THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASSES FOR
       SETTLEMENT PURPOSES AS PART OF ITS PRELIMINARY APPROVAL OF THE
       SETTLEMENT ..................................................................................................... 9

       A.     Standard for Conditional Certification of Settlement Classes ........................... 9

       B.     The Proposed Settlement Classes Satisfy Rule 23(a) ....................................... 10

              1.     The Settlement Classes Are So Numerous that Joinder Is Impracticable ........ 10

              2.     Questions of Law and Fact Are Common to the Settlement Classes ............... 11

              3.     Plaintiffs Lewis, Woolbright, and Borders' Pregnancy Discrimination Claims
                     are Typical of the Settlement Classes' Claims ................................................. 13

              4.     The Named Plaintiffs and Class Counsel are Adequate Representatives ........ 14

       C.     The Proposed Settlement Classes Satisfy Rule 23(b) ...................................... 15

V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT .............. 16

    A.    Standard for Preliminary and Final Approval of a Class Settlement ......................... 16

    B.    The Settlement is Within the Range of Possible Final Approval and Does Not Have
       Any Obvious Deficiencies ......................................................................................... 17

          1.    The Proposed Relief to the Settlement Classes is Adequate Considering the
              Risks of Continued Litigation, the Method for Distributing Relief, and the
              Proposed Attorneys' Fee Award .................................................................... 17

          2.    The Settlement Treats Class Members Equitably and the Criteria for
              Processing Claims Is Set Forth in the Notice and Claim Form ....................... 19

          3.    The Settlement was Negotiated at Arm's Length and Plaintiffs and Their
              Counsel Have Adequately Represented the Settlement Classes ..................... 19

    C.    The Notice Plan is Reasonable as Required by Rule 23(e)(1)(B) .............................. 20

VI.   CONCLUSION ................................................................................................................ 20

TABLE OF AUTHORITIES

**Cases**

*Acik v. I.C. Sys., Inc.*, 251 F.R.D. 332 (N.D. Ill. 2008) ..................................................... 10

*Arenson v. Whitehall Convalescent & Nursing Home*, 164 F.R.D. 659 (N.D. Ill. 1996) ............ 13

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) ....................................... 16

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426 (7th Cir. 2015) ........... 10

*City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012) ................. 9

*Coleman v. Sentry Ins.*, No. 15-CV-1411-SMY-SCW, 2016 U.S. Dist. LEXIS 149110
    (S.D. Ill. Oct. 27, 2016) ......................................................................... 17

*Cook v. Applebee's Servs.*, No. 13-cv-1289-SMY-SCW, 2015 U.S. Dist. LEXIS 130159
    (S.D. Ill. Sept. 28, 2015) ........................................................................ 15

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) ............................................. 12

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1988) ............................................................ 17

*Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641 (N.D. Ill. 2006) ................................. 14

*Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313 (N.D. Ill. 1995) ............................................ 14

*Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. Chi.*, 121 F.R.D. 664 (N.D. Ill. 1998) ....................... 13

*Ingram v. Corp. Receivables, Inc.*, No. 02 C 6608, 2003 U.S. Dist. LEXIS 14389
    (N.D. Ill. Aug. 19, 2003) ....................................................................... 12

*Kitson v. Bank of Edwardsville*, No. 08-507-GPM, 2009 U.S. Dist. LEXIS 85444
    (S.D. Ill. Sept. 18, 2009) ........................................................................ 16

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482
    (7th Cir. 2012) ............................................................................. 10, 17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McReynolds*, 568 U.S. 887,
    133 S. Ct. 338 (2012) ............................................................................ 17

*Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991) ............................................................. 14

*Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) ............................. 13, 14

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ................................................................ 14

*Scott v. Family Dollar Stores, Inc*., 733 F.3d 105 (4th Cir. 2013)................................................ 12

*Silverman v. Motorola Solutions, Inc.,* 739 F.3d 956 (7th Cir. 2013) .......................................... 9

*Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107 (9th Cir. 2014)................................. 12

*Wagner v. Nutrasweet Co*., 95 F.3d 527 (7th Cir. 1996) .............................................................. 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................................... 11, 17

*Young v. United Parcel Serv., Inc*., 135 S. Ct. 1338 (2015) ........................................................ 12

**Statutes and Regulations**

Class Action Fairness Act, 28 U.S.C. § 1715 .............................................................................. 8

Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ............................................... 1, 2

Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-l ............................................................. 8

**Other Authorities**

*Manual for Complex Litigation* (Fourth) § 21.632 (2004) ................................................... 10, 17

*Manual for Complex Litigation* (Third) § 30.41 (1995) ............................................................ 17

W. Declerq et al, *Listening to Working Mothers III* (New York: Childbirth Connection, 2013) at Table 18 *available at https://transform.childbirthconnection.org/reports/listeningtomothers/.* ................................................................................................................................................. 11

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................ 10, 14

Fed. R. Civ. P. 23(b)(3)........................................................................................................ 10, 15

Fed. R. Civ. P. 23(e) ........................................................................................... 1, 7, 9, 16, 17, 20

Fed. R. Civ. P. 23(g) ................................................................................................................. 14

Fed. R. Civ. P. 30(b)(6)............................................................................................................... 4

## I.      INTRODUCTION

Plaintiffs Talisa Borders, Otisha Woolbright, and Stacey Lewis have reached a proposed class action settlement agreement with Defendant Walmart Inc. ("Walmart") resolving claims that Walmart maintained a discriminatory written policy until March 5, 2014 ("National Policy"), that denied pregnant workers the same benefits offered to other workers similar in their ability or inability to work, in violation of the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k).

Plaintiffs, three women who sought workplace accommodations from Walmart due to pregnancy, seek the Court's preliminary approval of the class settlement agreement pursuant to Federal Rule of Civil Procedure 23(e), and in doing so ask the Court to conditionally certify two classes of workers for settlement purposes only, to appoint them class representatives, to appoint class counsel, to direct notice to the class, to set deadlines for opting out of or objecting to the settlement and for making a claim, and to schedule a date for a final fairness hearing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Plaintiffs Thoroughly Investigated the Class Claims and Exhausted Administrative Remedies

In March 2013, Plaintiff Borders, who worked at a Walmart in O'Fallon, Illinois, gave her employer notice that she could not lift more than 25 pounds due to a pregnancy-related medical restriction, and she sought light duty. Walmart denied her request even though light duty was available to employees who were injured on the job and who were similar in their ability to work. Rather than provide light duty, Walmart supervisors told Ms. Borders that she was required to take an unpaid leave of absence pursuant to Walmart's policy.

---

[1] Walmart does not concede the Plaintiffs' allegations, nor does it concede all of the factual statements set forth herein. For purposes of this Settlement, however, Walmart does not object to the filing of this motion for Preliminary Approval.

Ms. Borders sought legal counsel from A Better Balance, the National Women's Law Center, and Mehri & Skalet, PLLC ("Class Counsel"), and on January 11, 2014, Ms. Borders filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). She alleged that Walmart engaged in sex and pregnancy discrimination against her and a class of pregnant workers by, among other things, maintaining a written Accommodation in Employment policy (the National Policy) that denied pregnant workers light duty, temporary alternative duty, and other accommodations available to other workers, not pregnant, similar in their ability or inability to work, in violation of the Pregnancy Discrimination Act (PDA).

Less than two months after Ms. Borders filed her charge of discrimination with the EEOC, on March 5, 2014, Walmart changed the national Accommodation in Employment policy at issue in this case, but Walmart did not resolve Ms. Borders's claims at that time. Then, on April 24, 2014, Plaintiff Woolbright filed a charge of discrimination with the EEOC against Walmart pursuing claims similar to Ms. Borders's claims. A Walmart in Florida had denied Ms. Woolbright's requests for accommodation in the workplace due to pregnancy but granted similar accommodations when she was injured on the job.  Ex. A (Eardley Decl.) at ¶¶ 8-9.

Class Counsel engaged in an investigation of Walmart's conduct while both matters were pending before the EEOC. For example, Class Counsel spoke with pregnant workers who had concerns about their employment with Walmart and evaluated the procedural and substantive law. *Id.* at ¶¶ 6-10 Ms. Borders and Ms. Woolbright actively participated in the EEOC's investigation, including providing documents and providing an interview. *Id.* at ¶ 10.

**B. The Parties Engaged in Years of Adversarial Litigation of the Class Claims, Allowing Them to Better Assess the Strengths and Weakness of the Claims and Defenses**

After three years of the EEOC process, on May 12, 2017, Plaintiffs Borders and Woolbright filed this action on behalf of a putative class of Walmart workers who alleged that they were denied requested accommodations because of pregnancy between March 19, 2013, and March 5, 2014, including class claims of intentional and disparate impact pregnancy discrimination in violation of the PDA and individual retaliation claims in violation of Title VII. Compl. ¶¶ 49, 58-76.

Plaintiffs' complaint described the discriminatory provisions of the National Policy under which pregnant workers were expressly ineligible for light duty even though light duty was available to workers injured on the job. It also alleged that the policy treated workers with disabilities more favorably than pregnant workers who were similar in their ability or inability to work. *Id.* at ¶¶ 34-41.

The Plaintiffs amended the complaint on January 29, 2019, to add another named Plaintiff, Stacey Lewis, to the action. Ms. Lewis alleged that she had experienced pregnancy discrimination while she was working at a Walmart store in Virginia in March 2013. She too had a medically-imposed lifting restriction due to pregnancy that Walmart refused to accommodate. Am. Compl. ¶¶ 31-59.

Plaintiffs' case was one of the first, if not the first, in the nation in which private plaintiffs brought claims of pregnancy discrimination on behalf of a class of women who were denied workplace accommodations because of pregnancy.  All three Plaintiffs understood that there was a risk that a class would not be certified and remained steadfast throughout the litigation in their

3

desire to proceed on a class basis to try to help other women workers who had had similar experiences at Walmart.  Eardley Decl. at ¶¶ 5, 6, 9, 11, 48.

The litigation has been hard fought. For example, Walmart moved to dismiss all of Plaintiffs Borders and Woolbright's claims for failure to state a claim upon which relief could be granted and moved to dismiss Ms. Woolbright's claims for lack of personal jurisdiction, which, after briefing, the Court denied. Dkt. 84. Walmart also sought to stay discovery while its motion to dismiss was pending, which Plaintiffs opposed. Eventually, the Court set several scheduling orders, which had to be modified several times to allow the parties to continue class-wide discovery. Dkt. 71, 83, 95, 98, 100, 119.

Throughout the litigation, Class Counsel sought information regarding Walmart's National Policy, as well as several state-wide polices pertaining to accommodation in the workplace from 2013-2014, and the impact of such policies on pregnant employees and employees similar in their ability to work. Plaintiffs began class-wide discovery in November 2017, serving requests for admissions, interrogatories, and requests for production of documents. Plaintiffs took several Rule 30(b)(6) depositions of Walmart, and Plaintiffs as well as fact and expert witnesses were deposed.  There were 15 depositions total. Walmart produced thousands of pages of documents and detailed databases regarding its workforce. Two well-respected labor economists served as experts for Plaintiffs.  Plaintiffs' expert reports analyzed Walmart's workforce data pertaining to the putative class and provided a methodology for calculating class damages. Walmart retained its own expert to review its workforce data.  Discovery continued in earnest through March 2019. Eardley Decl. at ¶¶ 12-17.

On April 30, 2019, Plaintiffs had prepared and were ready to file a motion seeking certification of a class pursuant to Rule 23, but as discussed below, the parties opted to engage in

class-wide settlement negotiations. The Court granted the parties' request to modify the scheduling order to allow for such negotiations. Dkt. 119.

### C.  The Parties Engaged in Arm's-Length Negotiations of the Class Claims with the Assistance of a Well-Respected Mediator

The parties first explored settlement in November and December 2018. The parties retained a private mediator, Michelle Yoshida of Phillips ADR, who presided over a one-day, in-person mediation in December 2018. The parties exchanged confidential mediation briefs and discussed potential resolution of Plaintiffs' class claims. The parties were unable to reach an agreement and decided that negotiations should be suspended pending expert discovery. Eardley Decl. at ¶ 19.

From January through March 2019, the parties engaged in intensive expert discovery regarding the class claims. They exchanged expert reports, rebuttal reports, and a supplemental report regarding the class claims. All three experts were deposed. Plaintiffs prepared their motion for class certification, but the parties decided to resume settlement negotiations on the eve of the deadline for the motion. Ms. Yoshida presided over a second day of mediation on May 23, 2019. The parties made substantial progress toward resolving the class claims and continued the discussions telephonically with Ms. Yoshida.  *Id.* at ¶¶ 15, 20.  On June 12, 2019, the parties notified the Court that they had reached a settlement in principle. Dkt. 121. The parties executed a memorandum of understanding soon thereafter and spent several months negotiating the terms of the class settlement agreement, which they executed on October 14, 2019. Ex. B (Settlement Agreement or "S.A.").

### III.     SUMMARY OF THE SETTLEMENT AGREEMENT PROVISIONS

#### A.  Definition of the Settlement Classes

Based on the information ascertained in discovery, including expert reports, Plaintiffs have identified two settlement classes consisting of Walmart workers who sought an accommodation between March 19, 2013, and March 5, 2014, because of pregnancy. Two classes are identified because some pregnant workers' requests for accommodation were processed by Walmart's centralized Accommodation Service Center ("ASC Settlement Class") and other requests were not ("Non-ASC Settlement Class"). Further, the ASC Settlement Class is limited to employees who worked in 39 states, but the Non-ASC Settlement Class is nationwide. Plaintiffs assert that the ASC followed Walmart's discriminatory National Policy in 39 states,[2] using the policy to deny accommodations to women who worked in these states. Plaintiffs' experts' analyses of Walmart's data suggest that the ASC followed state-specific policies in 11 states (the "Pregnancy Temporary Alternative Duty (TAD) states")[3] and generally granted pregnant workers' requests for accommodation in these states, making light duty available to these employees. Thus, workers from these 11 states whose requests for accommodation were processed by Walmart's ASC are not part of either class. As such, the settlement classes are defined as follows:

> The ASC Settlement Class consists of all women employed by Walmart at stores in the 39 National Policy States who were denied requested accommodations because of pregnancy by the ASC during the Time Period (between March 19, 2013 and March 5, 2014, inclusive).

---

[2] The National Policy states include: Alabama; Alaska; Arizona; Arkansas; Colorado; Delaware; Florida; Georgia; Idaho; Indiana; Iowa; Kansas; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Nebraska; Nevada; New Hampshire; New Jersey; New York; New Mexico; North Carolina; North Dakota; Oregon; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; Washington; Wisconsin; and Wyoming. S.A. § 2.20.
[3] These states include: California, Connecticut, Hawaii, Illinois, Kentucky, Louisiana, Michigan, Montana, Ohio, Oklahoma, and Tennessee.  Eardley Decl. ¶ 13.

The Non-ASC Settlement Class consists of all women employed by Walmart at stores nationwide who were denied requested accommodations because of pregnancy by store level management and/or store-level human resource personnel during the Time Period.

S.A. §§ 2.4, 2.22.

### B. Notice to Class Members and Final Fairness Hearing

The parties propose a 60-day notice period with notice beginning soon after an order preliminarily approving the agreement. Walmart will provide class member and potential class member names[4] and last-known contact information, including email addresses if available, to the claims administrator within 10 business days of the order. Notice by U.S. Mail, and email where available, will follow within 20 business days of the order. S.A. §§ 6.2-6.3.

After notice, class members will have 60 days to opt out, rescind their request to opt out, object to the settlement, submit a claim, or do nothing. After the claim deadline, the claims administrator will review all claims, calculate an estimated award for each class member claimant, and prepare an affidavit describing the claims review process, the range of awards to claimants, and the median and average awards.  Class Counsel will submit the claims administrator's affidavit along with a memorandum in support of final approval of the class settlement pursuant to Rule 23(e)(2). S.A. § 5.3.2; Eardley Decl. at ¶ 31. The parties propose that the deadline for the motion for final approval be set no earlier than 60 days after the claim deadline and that the final fairness hearing be set approximately 15 days after the motion is filed.

---

[4] Walmart retained records of accommodation requests processed by the ASC but did not consistently maintain records of requests handled elsewhere, such as by store-level managers.  Thus, all members of the ASC Settlement Class have been identified, but the members of the Non-ASC Settlement Class will self-identify through the notice and claims process. Notice will be sent to all workers who were pregnant during the liability period as reflected in Walmart's records, including leave and short-term disability records. S.A. § 2.33. To submit a claim, these workers must attest that they requested an accommodation due to pregnancy and that it was denied. *Id.* at Ex. 1.

### C.  Settlement Fund and Claims Administrator

The settlement agreement contemplates a $14-million common fund for awards to approved claimants, costs of notice and claims administration, and attorneys' fees and expenses. S.A. § 5. Additionally, Walmart will separately pay: (1) the employer's portion of taxes or contributions for any backpay awarded through the settlement; and (2) distribution of notice to the state attorneys general as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *Id.* at § 7.1.

Plaintiffs propose AB Data as the claims administrator. AB Data is a claims administration company with experience managing qualified settlement funds and class employment discrimination and civil rights settlements. Eardley Decl. at ¶ 32. Walmart will transfer $14 million into a Qualified Settlement Fund ("QSF") as described in Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-l.  S.A. § 11.  AB Data will administer the settlement fund. The QSF will be a segregated bank account that will receive the settlement funds and will hold that sum, and any earnings thereon, until distribution by AB Data as more fully set forth in Section 11 of the Settlement Agreement.

### D.  Confidentiality of Claim Form

Claim form responses will be kept confidential. The identities of the claimants will not be disclosed to anyone other than counsel for the parties, the claims administrator, and Walmart employees who have a strict business need to know. S.A. at Ex. 1, Ex. 3 § 9. The purpose of such confidentiality is to encourage claimants to be forthcoming on their claim forms without fear of reprisal and to protect confidential and personal health information related to the claimants' pregnancies.

### E.  Attorneys' Fees and Expenses

Class Counsel will seek no more than 33.33% of the common fund in attorneys' fees and no more than $275,000 in legal costs. Eardley Decl. at ¶ 35. This approach is consistent with Seventh Circuit jurisprudence that awards class counsel attorneys' fees as a percentage of a common fund. *Silverman v. Motorola Solutions, Inc.,* 739 F.3d 956 (7th Cir. 2013). A fee of no more than one-third of the common fund is typical in the Seventh Circuit: "Courts throughout the Seventh Circuit routinely consider the fee awards in other class actions and conclude that a one-third contingency fee is standard." *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012).

Class Counsel will file a motion seeking fees and costs, along with supporting documentation and offering a lodestar crosscheck, on or before 30 days before the deadline to submit claims and to object. S.A. § 14.1.  This will provide class members sufficient information regarding Class Counsel's fees and costs prior to the final fairness hearing.

## IV.   THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASSES FOR SETTLEMENT PURPOSES AS PART OF ITS PRELIMINARY APPROVAL OF THE SETTLEMENT[5]

### A.  Standard for Conditional Certification of Settlement Classes

In determining whether to preliminarily approve the settlement, the Court must utilize the standards developed pursuant to Rule 23, which allows courts to certify a class for settlement purposes only. Rule 23(e). Conditional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global resolution, ensuring that all class members are notified of the terms of

---

[5] Walmart reserves its objections to certification of the claims alleged as a litigation class, but does not oppose certification of the settlement classes, for settlement purposes only and in accordance with the terms of the Parties' Settlement Agreement.

the proposed settlement, and setting the date and time of the final approval hearing. At the preliminary stage, the Court engages in a threshold inquiry intended merely to reveal conspicuous defects. *Manual for Complex Litigation* (Fourth) § 21.632 (2004). The proposed Settlement Classes in this case do not suffer from any conspicuous defects. They readily satisfy Rule 23(a) and (b)(3).

### B.  The Proposed Settlement Classes Satisfy Rule 23(a)

Under Rule 23(a), a class may be certified when:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Settlement Classes meet each of these requirements.

### 1.  The Settlement Classes Are So Numerous that Joinder Is Impracticable

The ASC Settlement Class and Non-ASC Settlement Class both satisfy the numerosity requirement.  While "there is no 'magic number' for numerosity, 'permissive joinder is usually deemed impracticable where the class members number 40 or more.'" *Acik v. I.C. Sys., Inc.*, 251 F.R.D. 332, 335 (N.D. Ill. 2008) (citation omitted); *see also Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 431 (7th Cir. 2015) (213 class members); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) (700 class members).

Based on the records produced by Walmart in discovery and Plaintiffs' expert analyses of that data, the ASC Settlement Class includes about 740 employees whose requests for accommodation due to pregnancy were denied by the ASC. A settlement class of 740 employees satisfies numerosity. The Non-ASC Settlement Class is also sufficiently large though its exact

10

size is unknown. Plaintiffs estimate the Non-ASC Settlement Class includes about 10,000 employees.[6]

### 2.   Questions of Law and Fact Are Common to the Settlement Classes

Commonality requires that the claims in a case raise questions of law or fact common to the class, but does not require that every issue of law or fact be identical with respect to each class member. Not all questions need to be common to the class – "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal citation and quotation marks omitted). In general, the commonality requirement is satisfied where there is at least one issue which, if resolved, affects all or a significant number of class members.

Here, Walmart's discriminatory National Policy provides "a common answer to the crucial question *why was I disfavored*" for the ASC Class and the Non-ASC Class. *Id*. at 352. The National Policy was a uniform corporate policy that discriminated against both putative classes. The National Policy, or a substantially similar state-specific policy, explicitly applied to women working in the 39 National Policy states. With regard to the ASC Settlement Class, the National Policy was implemented by the ASC; for the Non-ASC Settlement Class, the National Policy was implemented by store-level managers and HR personnel in both the 39 states where it applied and in the 11 Pregnancy Temporary Alternative Duty (TAD) states where local personnel mistakenly applied the National Policy due to Walmart's flawed dissemination of state policies and misleading training.

---

[6] The parties' experts identified about 35,000 pregnant workers during the liability period, excluding workers who requested accommodation via Walmart's ASC. According to Plaintiffs' expert and based on a study of pregnant women nationwide, it is reasonable to assume that about 75% of pregnant workers request accommodations. This estimate assumes that 75% of the 35,000 pregnant workers at Walmart requested accommodations and that their requests were denied at the same rate requests were denied by the ASC according to Plaintiffs' expert analysis of denials. W. Declerq et al, *Listening to Working Mothers III* (New York: Childbirth Connection, 2013) at Table 18 *available at https://transform.childbirthconnection.org/reports/listeningtomothers/.*

The National Policy is exactly the type of "uniform corporate polic[y]" that provides commonality. *See Scott v. Family Dollar Stores, Inc*., 733 F.3d 105, 117 (4th Cir. 2013); *see also Chi. Teachers Union*, 797 F.3d at 437 ("[A] company-wide practice is appropriate for class challenge even where some decisions in the chain of acts challenged as discriminatory can be exercised by local managers with discretion—at least where the class at issue is affected in a common manner, such as where there is a uniform policy or process applied to all."); *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1114, 1117 (9th Cir. 2014) ("a single, well-enunciated, uniform policy that, allegedly, generated all the disparate impact of which [plaintiffs] complain" provided commonality); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 520, 530 (N.D. Cal. 2012) ("common, companywide promotion system" provided commonality).

If litigation had continued, the Court would have had to resolve a common legal dispute, the answer to which would have applied to all class members; that is, did Walmart illegally discriminate against class members by treating their accommodation requests less favorably than requests from persons with disabilities and persons injured on the job who were similar in their ability to work. *Young v. United Parcel Serv., Inc*., 135 S. Ct. 1338 (2015) (courts must evaluate the extent to which an employer's policy treats pregnant workers less favorably than nonpregnant workers similar in their ability to work and determine whether there are legitimate, nondiscriminatory, nonpretextual reasons for this difference). The terms of the policies would not be in dispute; the interpretation of the PDA would be. Claims arising out of a common document giving rise primarily to legal rather than factual disputes are ideal for class certification. *See Ingram v. Corp. Receivables, Inc.,* No. 02 C 6608, 2003 U.S. Dist. LEXIS 14389, at *10 (N.D. Ill. Aug. 19, 2003) ("[C]laims arising out of standard documents present a 'classic case for treatment as a class action.'" (quoting *Haroco, Inc. v. Am. Nat'l Bank & Tr. Co.*

12

*Chi.*, 121 F.R.D. 664, 668 (N.D. Ill. 1998))); *accord Arenson v. Whitehall Convalescent &*

*Nursing Home*, 164 F.R.D. 659, 664 (N.D. Ill. 1996). Accordingly, the commonality requirement

is satisfied here.

### 3. Plaintiffs Lewis, Woolbright, and Borders' Pregnancy Discrimination Claims are Typical of the Settlement Classes' Claims

"[T]he typicality requirement primarily directs the district court to focus on whether the

named representatives' claims have the same essential characteristics as the claims of the class at

large." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596–97 (7th Cir. 1993). "A

plaintiff's claim is typical if it arises from the same event or practice or course of conduct that

gives rise to the claims of other class members and his or her claims are based on the same legal

theory." *Id*. Typicality "should be determined with reference to the company's actions, not with

respect to particularized defenses it might have against certain class members." *Wagner v.*

*Nutrasweet Co*., 95 F.3d 527, 534 (7th Cir. 1996).

Plaintiffs' claims are typical because, as Walmart workers, each faced the same treatment

as the class members: each was denied a request for a pregnancy-related accommodation

pursuant to Walmart's National Policy. Ms. Lewis submitted a request for accommodation

during her pregnancy to the ASC and was denied this accommodation via the standard denial

form letter sent to all pregnant women requesting accommodations. This is typical of members

of the ASC Settlement Class. Mses. Woolbright and Borders requested, and were denied,

accommodations during their pregnancy by store-level managers and/or human resource

personnel pursuant to the discriminatory National Policy. Their experiences are typical of the

members of the Non-ASC Settlement Class.

### 4. The Named Plaintiffs and Class Counsel are Adequate Representatives

Rule 23(a)(4) requires class representatives and their counsel to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4); *Retired Chi. Police Ass'n*, 7 F.3d at 598. Class representatives must not have antagonistic or competing interests to those of the putative class members, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and must have a sufficient interest in the outcome of the case, *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). This "low standard" requires only that each plaintiff "be a 'conscientious representative plaintiff,'" meaning that she has general knowledge of the case and participates in the discovery process. *Fournigault v. Indep. One Mortg. Corp*., 234 F.R.D. 641, 646 (N.D. Ill. 2006) (quoting *Rand v. Monsanto Co*., 926 F.2d 596, 599 (7th Cir. 1991)). Plaintiffs do not have claims antagonistic to or conflicting with the class. They have fully participated in discovery, including document production and interrogatories, and sat for a full day of deposition. Each has expressed her desire to help all pregnant workers harmed by Walmart's National Policy.

To satisfy Rule 23(a)(4), class counsel must be "competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Gammon*, 162 F.R.D. at 317. Here, Mehri & Skalet, PLLC has significant experience representing plaintiffs in class actions, particularly employment discrimination class actions. Eardley Decl. at ¶¶ 40-46.  A Better Balance and the National Women's Law Center have particularized legal expertise combating pregnancy discrimination.[7]  Ex. C (Bakst Decl.) *passim*; Ex. D (Martin Decl.) *passim*. Class counsel have conducted this litigation competently and zealously.

---

[7] Class Counsel's declarations also establish that counsel meet the standards of Rule 23(g) setting forth the requirements for class counsel.

### C.  The Proposed Settlement Classes Satisfy Rule 23(b)

Rule 23(b)(3) allows an action for money damages to be maintained as a class if "the questions of law and fact common to class members predominate over any questions affecting only individual members," and should be certified if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the central issue will be the legal one of whether Walmart's National Policy, applicable to all members of both Settlement Classes, violated the PDA in requiring Walmart's decisionmakers, whether they be in the ASC or in stores, to treat pregnant workers worse than workers with disabilities and workers injured on the job in not offering the pregnant workers accommodations or light duties that were offered to the others. *See Cook v. Applebee's Servs*., No. 13-cv-1289-SMY-SCW, 2015 U.S. Dist. LEXIS 130159, at *7 (S.D. Ill. Sept. 28, 2015) (Yandle, J.) (the predominance requirement was met because the "ultimate question" was the legality of the defendant's vacation policy). Resolving these central issues is also far superior to allowing claims to proceed on an individual basis, which could lead to inconsistent judgments regarding the same Walmart policy.

Common issues also predominate regarding facts. Class members were all Walmart workers whose requests for pregnancy-related accommodations were denied and Walmart's National Policy adversely impacted them. Each class member has the same claim of discrimination based on both disparate treatment and disparate impact. The same categories of evidence—including the National Policy and statistical evidence of disparate impact on class members—will be used by each class member to prove liability and damages. Accordingly, common legal and factual questions predominate here.

## V.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.  Standard for Preliminary and Final Approval of a Class Settlement

Rule 23(e) governs approval of a class action settlement.  It provides, in relevant part, that:

> The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) *Notice to the Class*…
>
>    (B) *Grounds for a Decision to Give Notice*. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:
>
>        (i) approve the proposal under Rule 23(e)(2); and
>        (ii) certify the class for purposes of judgment on the proposal.
>
> (2) *Approval of the Proposal*.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>    (A) the class representatives and class counsel have adequately represented the class;
>    (B) the proposal was negotiated at arm's length;
>    (C) the relief provided for the class is adequate, taking into account:
>        (i) the costs, risks, and delay of trial and appeal;
>        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>        (iv) any agreement required to be identified under Rule 23(e)(3); and
>    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).  At this preliminary stage, as this Court has recognized, the Court's duty is to "make a preliminary determination as to the reasonableness of the proposed class action settlement before making any final determination."  *Kitson v. Bank of Edwardsville*, No. 08-507-GPM, 2009 U.S. Dist. LEXIS 85444, *5-6 (S.D. Ill. Sept. 18, 2009).

Historically, courts approved a settlement in two stages—preliminary and final. The preliminary stage was codified in Rule 23(e)(1) as a result of the 2018 amendments to the Rule. At the outset, the Court determines whether the proposed settlement is "within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs*., 616 F.2d 305, 314 (7th Cir. 1980) (internal

citations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir.

1988); *Coleman v. Sentry Ins.*, No. 15-CV-1411-SMY-SCW, 2016 U.S. Dist. LEXIS 149110, *4

(S.D. Ill. Oct. 27, 2016) (noting that at the preliminary stage the Court found that the settlement

was "within the range of possible final approval"). Second, after notice, the Court determines

whether the proposed settlement is "fair, reasonable, and adequate" as required by Rule 23(e)(2).

Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other

obvious deficiencies," the Court should order notice to class members. *Manual* (Third) § 30.41

(1995). The Court should determine whether it is reasonable to believe that the agreement may

be fair, reasonable and adequate, while deferring a final determination until after notice is sent

and comments and objections may be considered. *Manual* (Fourth) § 21.632.

> **B.  The Settlement is Within the Range of Possible Final Approval and Does Not Have Any Obvious Deficiencies**
>
> > **1.  The Proposed Relief to the Settlement Classes is Adequate Considering the Risks of Continued Litigation, the Method for Distributing Relief, and the Proposed Attorneys' Fee Award**

The $14 million settlement will provide excellent monetary relief to class members given

the risks of continued litigation. All parties and their counsel recognize that, in the absence of an

approved settlement, they would face continued protracted litigation, including a motion for class

certification and *Daubert* motions related to class certification, merits discovery, motions for

summary judgment, trial and potential appellate proceedings that would consume time and

resources and present ongoing risks and uncertainties. S.A. §§ 1.1, 3.5. Plaintiffs would face

additional uncertainty due to the evolving standards for class certification as courts wrestle with

how to interpret *Dukes. See, e.g., Dukes*, 564 U.S. 338; *McReynolds v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir.), *cert denied*, 568 U.S. 887 (2012).

Though the exact award per class member cannot be determined now, class members will receive approximately $819 to $2,049, if not more, after fees and costs. Eardley Decl. at ¶ 33. Assuming claims administration costs do not exceed $200,000, that the Court grants counsel's motion for fees of 33.33% of the common fund plus $275,000 in expenses, and that there are about 11,000 settlement class members, then the average award per person will be about $819.70 if all class members submit valid claims, about $1,639.39 if half submit valid claims, and about $2,049.24 if 40% submit valid claims. For comparison purposes, $2,049.24 is roughly equivalent to 215.7 hours of backpay at the average hourly rate for a Walmart sales associate of $9.50 per hour as estimated by Plaintiffs' expert, or more than 7 weeks of work for those working less than 30 hours a week. *Id.* at ¶ 34. Of course, if the claims rate is lower, the average award will be between $2,000 to $3,000, if not higher. *Id.* at ¶ 33.

When compared with recent employment discrimination settlements involving classes with over 500 members and workers in retail chains or other entry-level or service jobs, the settlement fund here is more than adequate.

| Case Name | Year | Settlement Amount | No. of Class Members | Amount per Class Member |
|---|---|---|---|---|
| *Rotondo v. JPMorgan Chase Bank, N.A.*, No. 1:19-cv-00408 (S.D. Ohio) (gender) | 2019 | $5 million | About 5,000 | ~$1,000 |
| *EEOC v. Cintas Corp.*, No. 2:04-cv-40132 (E. D. Mich.) (gender) | 2015 | $1.5 million | About 800 | ~$1,875 |
| *Parra v. Bashas' Inc.*, No. 2:02-cv-00591, (D. Az) (race) | 2014 | $6.5 million | 12,000 | ~$541 |
| *Cogdell v. The Wet Seal*, No. SACV 12-01138 (C.D. Ca.) (race) | 2013 | $7.5 million | About 1,600 | ~$4,600 |
| *Duling v. Gristede's Operating Co.*, No. 06 Civ. 10197, 2012 U.S. Dist. LEXIS 164226 (S.D.N.Y.) (gender) | 2012 | $1.45 million (excluding fees) | 2,527 | ~$574 (settlement amount includes gift cards) |
| *Stagi v. Nat'l R.R. Passenger Corp.*, Case No. 09-3512 (3d Cir.) (gender) | 2012 | $2 million | 5,383 | ~$371 |
| *Womack v. Dolgencorp Inc.*, No. 2:06-cv-00465 (N.D. Al.) (gender) | 2011 | $18.75 million | 2,000+ | ~$9,300 |

### 2.   The Settlement Treats Class Members Equitably and the Criteria for Processing Claims Is Set Forth in the Notice and Claim Form

The settlement allows class members to submit claims that will be reviewed by an experienced, neutral claims administrator who will objectively score the claims.  The point system devised by the claims administrator will be based on the information provided on the claim forms regarding class members' damages, class members' contributions to the litigation, and whether the individual is releasing claims other than pregnancy discrimination, as the Named Plaintiffs are. S.A. § 5.3.2.

The claims administrator will consider that Named Plaintiffs devoted significant time and energy into the litigation, risked retaliation from Walmart, and that they are releasing Walmart from all claims, not just pregnancy discrimination claims. To ensure transparency, class members are apprised in the notice that Named Plaintiffs will be allocated additional points for their efforts, the retaliation that they faced, and the fact that the Settlement Agreement requires them to release broader claims against Walmart. S.A. at Ex. 3 § 8.

After notice and before the Court decides whether to finally approve the settlement, the claims administrator will submit a declaration to the Court describing the claims review process, the total number of points awarded, the range of the monetary value of claims, and the average amount of each claim. Such a process treats class members equitably and accounts for the unique circumstances and efforts of the Named Plaintiffs and any other class members who contributed to the investigation and litigation.

### 3.   The Settlement was Negotiated at Arm's Length and Plaintiffs and Their Counsel Have Adequately Represented the Settlement Classes

The settlement was primarily negotiated in two in-person mediation sessions that were guided by an experienced mediator.  *See supra* at 5.  Meaningful class-related litigation ensued

between these two sessions, including whether statistically significant disparities existed between outcomes for pregnant workers who were denied accommodations and similarly situated comparators. The litigation ensured that the parties were well-informed and that their negotiations were at arm's length. Eardley Decl. at ¶¶ 4-20.  Further, the Named Plaintiffs and their counsel have adequately represented the Settlement Classes throughout the investigation of the class claims, the administrative process before the EEOC, the litigation, and the settlement negotiations.  *See infra* at 1-5.

### C.  The Notice Plan is Reasonable as Required by Rule 23(e)(1)(B)

The notice plan is reasonable and contemplates notice by U.S. Mail and email if available to all ASC Settlement class members and, for the Non-ASC Settlement Class, to all workers who were pregnant during the class period according to Walmart's records.  S.A. § 6.2-6.3. Notice by mail is overinclusive to reach as many class members as possible. Additionally, the notice will be posted on websites and/or social networking sites for A Better Balance, the National Women's Law Center, and Mehri & Skalet, PLLC. S.A. § 6.7, 21.1.

### VI.    CONCLUSION

Because the Settlement Agreement is the product of arm's-length negotiations, within the range of possible judicial approval, and has no obvious deficiencies, the Court should grant preliminary approval and order that notice be given to the class, including notice of the final approval hearing, pursuant to Rule 23(e).

Dated: October 15, 2019                    Respectfully Submitted,

                                                          */s/ Ellen Eardley*                          
**SEDEY HARPER WESTHOFF P.C.**      **MEHRI & SKALET, PLLC**
Mary Ann Sedey                              Ellen Eardley (*pro hac vice*)
Donna Harper                                 Michael D. Lieder (*pro hac vice*)
2711 Clifton Avenue,                        Cyrus Mehri (*pro hac vice*)
Saint Louis, MO 63139                      Lauren Nussbaum (*pro hac vice*)

Telephone: 314-773-3566
msedey@sedeyharper.com
dharper@sedeyharper.com

**A BETTER BALANCE**
Dina Bakst (*pro hac vice*)
Elizabeth Chen (*pro hac vice*)
80 Maiden Lane, Suite 606
New York, NY 10038
Telephone: 212-430-5982
dbakst@abetterbalance.org
echen@abetterbalance.org

Elizabeth Gedmark (*pro hac vice*)
2301 21st Ave S., Suite 355
Nashville, TN 37212
Telephone: 615-915-2417
egedmark@abetterbalance.org

1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: 202-822-5100
eeardley@findjustice.com
mlieder@findjustice.com
cmehri@findjustice.com
lnussbaum@findjustice.com

**NATIONAL WOMEN'S LAW CENTER**
Emily Martin (*pro hac vice*)
Sunu P. Chandy (*pro hac vice*)
11 Dupont Cir NW, Suite 800
Washington, DC 20036
Telephone: 202-588-5180
emartin@nwlc.org
schandy@nwlc.org