# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BORDERS et al.,<br>On behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WAL-MART, INC.,<br>    Defendant. | Civil No. 3:17-cv-0506<br><br>CLASS ACTION |

## DECLARATION OF ELLEN L. EARDLEY

Pursuant to Title 28 USC Section 1746, I hereby declare and state as follows:

1.  My name is Ellen Eardley, and I am a partner at the law firm of Mehri & Skalet, PLLC (hereinafter "M&S"). I serve on the firm's management team.

2.  I am submitting this declaration on behalf of myself and my co-counsel in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement Agreement, Conditional Certification of the Settlement Classes, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of the Settlement and Settlement Procedure.

3.  My law firm, Mehri & Skalet, PLLC ("M&S"), and our co-counsel, A Better Balance ("ABB") and the National Women's Law Center ("NWLC"), seek to be appointed class counsel in this matter pursuant to Federal Rule of Civil Procedure 23(g). I am proposed co-lead class counsel. Mary Anne Sedey and Donna Harper of Sedey Harper Westhoff, P.C., nationally recognized employment discrimination attorneys with experience in class and pattern and practice cases, serve as local counsel.

**History of the Case, the Risks of Litigation, and Settlement Negotiations**

4.      Our co-counsel at the non-profit organizations ABB and NWLC are national experts on pregnancy discrimination in the workplace.  They approached M&S over five years ago to work together with them on a pregnancy discrimination case against Walmart after they were contacted by Plaintiff Talisa Borders.  My firm, M&S, is a well-known civil rights firm that regularly handles complex litigation, and I had previously worked at the NWLC.

5.      In 2013, Plaintiff Borders sought counsel to address pregnancy discrimination she experienced while working at a Walmart store in O'Fallon, Illinois in 2013.  Plaintiff Borders wanted to address the pregnancy discrimination she endured and also wanted to help other women workers who had had similar experiences at Walmart.

6.      Soon after connecting with Ms. Borders, ABB, NWLC, and M&S (collectively "Class Counsel") began an investigation of her individual claims and potential class claims. At this time, we believed that there had been no other class cases alleging that an employer's systemic failure to accommodate pregnant workers violated the PDA.  We carefully assessed the related case law, including the risks associated with pursuing a gender-related class action against Walmart after *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

7.      On January 11, 2014, Ms. Borders filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in the St. Louis, Missouri, District Office alleging that Walmart engaged in sex and pregnancy discrimination against her and a class of pregnant workers by, among other things, maintaining a written Accommodation in Employment policy that denied pregnant workers light duty, temporary alternative duty, and other accommodations available to other workers, not pregnant, similar in their ability or inability to work, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy

2

Discrimination Act, 42 U.S.C. §§ 2000e *et seq*. Later in the litigation, Plaintiffs referred to this policy as the "National Policy" after Plaintiffs learned there were also several state policies.

8. Shortly after Ms. Borders filed her charge, on March 5, 2014, Walmart changed the National Policy at issue in this case. *See, e.g.,* Lydia DePillis, *Under Pressure, Wal-Mart Upgrades Its Policy for Helping Pregnant Workers*, Washington Post, Apr. 5, 2014, available at https://www.washingtonpost.com/news/wonk/wp/2014/04/05/under-pressure-walmart-upgrades-its-policy-for-helping-pregnant-workers/ (last visited Oct. 2, 2019). But, Walmart did not resolve Ms. Borders's claims at that time. My co-counsel and I remained concerned about the impact of Walmart's National Policy and state policies on workers who were pregnant from March 19, 2013 through March 5, 2014.

9. Subsequently on April 24, 2014, Plaintiff Woolbright, who had retained Class Counsel, filed a charge of discrimination with the EEOC against Walmart pursuing claims similar to Ms. Borders's claims. Like Plaintiff Borders, Plaintiff Woolbright wanted Walmart to pursue her own claims and help other employees who had been pregnant while working at Walmart.

10. While Plaintiffs' EEOC charges were pending, Class Counsel continued to investigate their individual and class claims and continued to speak with Walmart workers. Plaintiffs and Class Counsel also worked with the EEOC, including providing documents and participating in interviews. Eventually, the EEOC issued the Notice of Right to Sue for Ms. Woolbright on February 14, 2017 and for Ms. Borders on May 17, 2017.

11. Plaintiffs Borders and Woolbright filed this litigation on behalf of themselves and a putative class of Walmart workers who were denied requested accommodations because of pregnancy between March 19, 2013, and March 5, 2014, alleging class claims of intentional and disparate impact pregnancy discrimination in violation of Title VII and individual retaliation

claims in violation of Title VII. On November 15, 2018, Plaintiffs sought to amend the complaint to add the individual and class claims of Plaintiff Stacey Lewis whose claims are similar to Plaintiffs Borders and Woolbright's claims. Plaintiff Lewis contacted Class Counsel after learning about a *New York Times* article regarding pregnancy discrimination by Walmart that discussed Plaintiff Woolbright's experiences. Natalie Kitroeff and Jessica Silver-Greenberg, *Pregnancy Discrimination is Rampant Inside America's Biggest Companies*, N.Y. Times, June 15, 2018 available at https://www.nytimes.com/interactive/2018/06/15/business/pregnancy-discrimination.html (last visited Oct. 2, 2019). Plaintiff Lewis also retained Class Counsel to pursue individual and class claims because she wanted to help other workers.

12.     The litigation was hotly contested by the parties and zealously pursued by Class Counsel. Walmart filed a motion to dismiss and objected to discovery. Because a class pregnancy accommodation case has rarely been litigated under Rule 23, the case presented many novel issues.

13.     Beginning in November 2017, Plaintiffs pursued class-wide discovery, serving requests for admissions, interrogatories, and requests for production of documents related to, among other things, the discriminatory National Policy. In addition to discovery regarding Walmart's National Policy, we also conducted discovery regarding Walmart's written state policies that provided some form of Temporary Alternative Duty (TAD or light duty) to pregnant workers during the liability period in 11 states, including California, Connecticut, Hawaii, Illinois, Kentucky, Louisiana, Michigan, Montana, Ohio, Oklahoma, and Tennessee. During the class discovery period, Plaintiffs took several Rule 30(b)(6) depositions of Walmart, and Plaintiffs as well as fact and expert witnesses were deposed, for a total of 15 depositions.

14. Counsel for the parties engaged in regular conferences pursuant to the Federal Rules over discovery disputes regarding Plaintiffs' requests for production of documents and interrogatories and Walmart's failure to respond.  Eventually, Walmart produced thousands of pages of documents and detailed databases regarding its workforce.

15. To better understand the class-wide claims and to analyze the datasets Walmart produced, Plaintiffs retained two well-respected labor economists to serve as experts.  Plaintiffs' experts reviewed Walmart's workforce data pertaining to the putative class and provided a methodology for calculating class-wide damages. Walmart retained its own expert to review its workforce data.  The parties exchanged three initial expert reports and two rebuttal reports.  Plaintiffs also submitted a supplemental expert report.  The expert reports provided complex statistical analyses, including regression analyses, regarding pregnant workers' experiences.

16. Class Counsel, their expert, and their teams spent hundreds of hours deciphering Walmart workforce data, identifying holes in the data, engaging in data entry to simplify the data, and developing pioneering approaches for assessing the data.

17. Class and expert discovery continued through March 2019.

18. Class Counsel prepared Plaintiffs' motion for class certification and supporting papers, which were ready to file on April 30, 2019.  Shortly before the deadline for Plaintiffs' class certification motion, the parties decided to revisit earlier discussions that they had had regarding the possibility of settlement.

19. The parties engaged in their first meaningful exploration of settlement negotiations in November and December 2018 with the assistance of Michelle Yoshida of Phillips ADR, who presided over a one-day, in-person mediation in December 2018.  The parties exchanged confidential mediation briefs in November 2018 and discussed potential resolution of Plaintiffs'

class claims. Settlement counsel, rather than litigation counsel, represented Walmart at the mediation. The parties were unable to reach an agreement in December 2018 and decided that negotiations should be suspended pending further prosecution of the case including the exchange of expert reports regarding the class-wide claims and expert depositions.

20. After the exchange of expert reports and deposition of all three experts, the parties resumed mediation on May 23, 2019, with the assistance of Ms. Yoshida. On June 12, 2019, the parties notified the Court that they had reached a settlement in principle. The parties executed a memorandum of understanding shortly thereafter and spent several months negotiating the terms of the class action settlement agreement. The settlement was fully executed on October 14, 2019.

**Benefits of the Settlement**

21. The Settlement Agreement and Plaintiffs' Memorandum in Support of the Motion for Preliminary Approval set forth the details of the $14 million settlement.

22. In my judgment and in the judgment of all Class Counsel, the terms of this settlement are very beneficial to the settlement classes and easily meet the legal standard requiring a class settlement to be "fair, reasonable, and adequate" before a Court approves the settlement.

23. After completing extensive investigation of the claims, engaging in intensely disputed litigation, and working with expert labor economists, my colleagues and I fully understand the strengths and weaknesses of this case. Our judgment is informed by my firm's experience bringing class action employment discrimination cases, *see infra* ¶¶ 40-45, our knowledge of relevant case law regarding pregnancy discrimination and class actions, and the legal landscape, *see, e.g.,* Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 N.Y.U. L. Rev. 286, 314-22 (2013); Kevin M. Clermont and Stewart J. Schwab, *Employment Discrimination*

*Plaintiffs in Federal Court: From Bad to Worse?*, 3 Harv. L. Pol'y Rev. 103, 127-29 (2009) (an analysis of data from the Administrative Office of U.S. Courts revealed that employment discrimination plaintiffs win only 28.47% of trials while plaintiffs overall win 44.94% percent of trials; when employment discrimination plaintiffs win at trial, the judgment is reversed on appeal 41.10% of the time, but trial judgments for employment discrimination defendants are reversed on appeal only 8.72% of the time – a five to one disparity in favor of employers). This case has the additional risks of highly complex statistical analyses, dueling expert reports, and potential *Daubert* motions on both sides.

24. The obstacles facing civil rights litigants are daunting, and class cases face the added hurdle of satisfying the requirements of Rule 23. Bearing this in mind, my colleagues and I believe that this settlement provides the classes an outstanding result without the continued delay and substantial risks of ongoing litigation. We believe that the settlement fund equals or exceeds the amount that could be realistically recovered for the class if we continued to litigate.

25. It is possible that, even if the Plaintiffs had continued to litigate, a class or classes had been certified, and the Plaintiffs had survived an almost inevitable appellate challenge to certification, prevailed in a trial on the merits, and won a likely appeal, the class members would not have achieved the level of relief that is provided in this settlement. There is also genuine risk, in the absence of a settlement, that no class would be certified, only one of the classes would be certified, a smaller class or classes would be certified, or that a certified class or certified smaller class would achieve no relief at all.

**Claims Process and Awards to Class Members**

26. The settlement allows class members who were pregnant during the class period and who requested a workplace accommodation that Walmart allegedly denied because of pregnancy to receive meaningful monetary relief without the risk of continued litigation.

27. It is not possible to know the exact number of class members at this time because Walmart's electronic records did not track all employee requests for workplace accommodation based on pregnancy and whether such requests were granted or denied. Based on Walmart's available records as well as expert analysis, my co-counsel and I estimate that there are approximately 11,000 class members.

28. The common fund created by the settlement is $14 million. In addition, Walmart must pay its share of the payroll taxes on the awards to class members. Thus, the overall value of the settlement exceeds $14 million. Moreover, under the terms of the settlement, none of the $14 million can ever revert back to Walmart.

29. Notice of the opportunity to file a claim for monetary relief from the common fund will be sent via U.S. Mail (and via email where available) to all Walmart workers between March 19, 2013 and March 5, 2014 who, according to Walmart's records: (a) requested a workplace accommodation due to pregnancy from Walmart's centralized Accommodation Service Center and that accommodation was denied; or (b) who were pregnant.

30. Class Counsel drafted the notice in consultation with the claims administrator to be clear and understandable to class members.

31. The allocation of monetary awards to class members from the settlement fund will be based on a scoring system developed by the claims administrator using the factors set forth in the Settlement Agreement. Each factor identified in the Settlement Agreement and each category

on the claim form will be assigned points. After all claims have been submitted, the total number of points assigned to valid claims will be divided by the total amount of settlement funds available and each point will be assigned a monetary value. Once these calculations are complete, upon the motion for final approval of the settlement, Class Counsel will inform the Court of the value of each point, the range of claimant awards, and the average award by submitting a declaration from the claim administrator, and will seek Court approval before distributing monetary awards to eligible claimants.

32. The claims administrator agreed to by the parties is A.B. Data, Ltd. Attorneys at my firm have worked with A.B. Data on the administration of several class action settlements, including *White v. Lynch*, EEOC No. 510-2012-00077X, Agency No. BOP-2011-00528, a class action sexual harassment settlement. In *Lynch*, my firm relied on A.B. Data to score the claim forms and develop a point system for the scoring similar to the process proposed in this settlement. It is my understanding that A.B. Data has also administered a class action settlement in which Walmart was a defendant. I feel confident that A.B. Data will efficiently administer the notice and claims process.

33. At this time, it is not possible to know exactly how much each class member who submits a claim will receive from the settlement, but relying on reasonable estimates, my colleagues and I believe that the award per class member will be a meaningful amount of money for most Walmart workers. Assuming that costs of claims administration do not exceed $200,000, that the Court grants Plaintiffs' Counsel's motion for fees in the amount of 33.33% of the common fund plus approximately $275,000 in expenses, and that there are 11,000 settlement class members, then the award per class member will be about $819.70 if all 11,000 class members submit valid claims, about $1,639.39 if half of the class members submit valid claims, and about

9

$2,049.24 if 40% of the class members submit valid claims. It is possible that the claim rate may be lower than 40% of the class given the time that has elapsed. Based on our past experience, we expect that the average class member recovery will exceed $2,000 and is likely to exceed $3,000.

34. These estimated awards are certainly adequate given the risks of continued litigation. For comparison purposes, $2,049.24 is roughly equivalent to 215.7 hours of backpay at the average hourly wage rate for a Walmart sales associate of $9.50 per hour as estimated by Plaintiffs' expert, or more than 7 weeks for those working less than 30 hours. My co-counsel and I believe that many Walmart workers are regularly scheduled to work less than 30 hours per week.

35. The Settlement provides that Class Counsel will petition the Court for attorneys' fees plus reimbursement of out-of-pocket expenses from the common fund. Class Counsel will not seek more than 33.33% of the common fund plus $275,000 in expenses.

36. My colleagues and I will provide further detail regarding our lodestar and expenses in their motion for fees and expenses that will be filed 30 days prior to the final fairness hearing and prior to the deadline to submit claims or opt out. In addition to the legal work that will have been performed at the time of such motion, I anticipate that we will perform substantial additional legal work and incur additional expenses in connection with the settlement, including preparing for and participating in the final approval hearing, providing assistance to class members, working with the claims administrator, and responding to inquiries.

**Factors for the Court's Consideration Under Rule 23(g) in Appointing Class Counsel**

37. In appointing class counsel, Rule 23(g) directs the Court to consider four factors. First, the Court should consider the "work counsel has done in identifying or investigating the potential claims." Fed. R. Civ. P. 23(g)(1)(A)(i). M&S, ABB, and NWLC have invested thousands of hours identifying, investigating and pursuing the potential class claims against Walmart,

10

including but not limited to preparing and filing EEOC charges alleging systemic discrimination, interviewing women seeking legal representation regarding their potential pregnancy discrimination claims, drafting the complaint and amended complaint, successfully opposing Walmart's motion to dismiss, taking numerous Rule 30(b)(6) depositions, engaging in voluminous discovery and document review, retaining and working with two expert witnesses to support class-wide claims of discrimination and class certification, analyzing Walmart's expert reports and statistical analyses, deposing Walmart's expert, preparing a motion and brief in support of class certification, and negotiating a class action settlement.

38.  Second, under Rule 23(g)(1)(A)(ii), the Court considers counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action, and, third, under Rule 23(g)(1)(A)(iii), the Court considers counsel's knowledge of the applicable law.  Collectively M&S, ABB, and NWLC have decades of experience representing women in employment discrimination class and collective actions and significant expertise in representing women in matters alleging pregnancy discrimination.  Our unique experience and expertise more than satisfy Rule 23(g)(1)(A)(ii)-(iii) and are described below and in the declarations submitted by Dina Bakst, Co-Founder and Co-President of A Better Balance and by Emily Martin, Vice President for Education and Workplace Justice of the National Women's Law Center.

39.  Finally, Rule 23(g)(1)(A)(iv) directs the Court to consider the resources that counsel will commit to representing the class.  Together our organizations have invested thousands of hours of attorney time and thousands of dollars in legal costs in this matter, including retaining two expert witnesses.  We commit to continuing to bring the resources necessary to bear to advance the interests of the settlement classes.

**Mehri & Skalet's Class Action and Gender/Pregnancy Discrimination Experience**

40. M&S represents plaintiffs in complex litigation. Lawyers in our firm have over 30 years of experience representing plaintiffs in dozens of class and collective actions in a variety of fields, including civil rights, employment discrimination, wage and hour, consumer fraud, and antitrust. Most significantly, my colleagues and I have had the privilege of representing people of color and women in employment discrimination and other civil rights class actions.

41. I have served as class counsel in several employee and plaintiff classes in civil rights matters, including several gender discrimination class actions on behalf of women workers under Title VII of the Civil Rights Act of 1964. *See Augst-Johnson v. Morgan Stanley & Co.*, No. 1:06-CV-01142 (D.D.C. Oct. 26, 2007) ($46 million settlement and programmatic relief on behalf of female financial advisors); *Norflet v. John Hancock Life Insurance*, 3:04CV1099 (D. Conn. Aug. 21, 2009) ($24.4 million settlement of behalf of African Americans denied equal opportunity in the sale of life insurance); *Carter v. Wells Fargo Advisors, LLC*, No. 1:09-CV-01752 (D.D.C. June 9, 2011) ($32 million settlement and similar injunctive relief); *Brown v. Medicis Pharmaceutical Corp.*, No. 1 : 13-cv01345 (D.D.C. July 11, 2016) )($7.15 million settlement in gender discrimination class action, including hostile work environment claims); *Howard v. Cook County Sheriff's Office*, No. 1:17-cv-08146 (N.D. Ill. Aug. 12, 2019)(certified sexual harassment class action on behalf of women who work at the Cook County Jail complex).

42. In addition to my class action civil rights experience, I began my career as a fellow and counsel at the National Women's Law Center, have represented individuals and small groups of employees and consumers in race, gender, and pregnancy discrimination matters in private practice, and served as the Assistant Vice Chancellor for Civil Rights & Title IX at the University of Missouri, where among other projects, I convened a working group to develop policies

12

regarding pregnancy accommodations for graduate and undergraduate students. I also volunteer with First Shift Justice Project, a non-profit organization in Washington, DC, that empowers low-income pregnant women and parents to safeguard the economic security and health of their families by asserting their workplace rights. In *Young v. United Parcel Serv., Inc*., 135 S. Ct. 1338 (2015), I authored an amicus brief to the Supreme Court joined by 50 state and local legislators, in support of Peggy Young's challenge to UPS's refusal to accommodate her medical needs during pregnancy and interpreting the Pregnancy Discrimination Act. Several years ago, I represented an individual worker in her pregnancy discrimination claims against a large retailer before the District of Columbia Commission on Human Rights. Previously, I taught Sex-Based Discrimination at the American University Washington College of Law and Women and the Law at the University of Cincinnati. In addition to a law degree, I hold a master's degree in Women's Studies from the University of Cincinnati and an undergraduate minor in Women's Studies from Eastern Illinois University.

43. My colleague, Michael Lieder, joined M&S in 2012 and works primarily on employment discrimination class action and FLSA collective action matters. He has served as lead counsel or in another leading role in numerous major employment discrimination class actions, including *Medicis*, referenced above, as well as a systemic hostile work environment class action on behalf of women workers at a federal prison, *White v. Lynch*, EEOC No. 510-2012-00077X (EEOC Dec. 8, 2017) (granting final approval of class action settlement of $20 million plus injunctive relief to address sexual harassment). *See also Thornton v. Nat'l R.R. Passenger Corp*., No. 1:98-cv-890 (D.D.C.) ($16 million plus broad injunctive relief in race discrimination class action); *McLaurin v. Nat'l R.R. Passenger Corp*, 1:98-cv-2019 (D.D.C.) ($8 million plus broad injunctive relief in race discrimination class action); *Hyman v. First Union Corp*., No. 94-1043

13

(D.D.C.) ($58.5 million in age discrimination collective action); *In re PEPCO Employment Litig.*, No. 860603, 1993 U.S. Dist. LEXIS 7905 (D.D.C.) (June 8, 1993) ($38.4 million and broad injunctive relief). Before coming to Mehri & Skalet, Mr. Lieder led or co-led numerous employment class action lawsuits, including a gender hostile environment, pay, and promotion case, *Carlson v. C.H. Robinson Worldwide, Inc.* No. 02-CV-3780 (D. Minn.), and had a role in the first successful sexual harassment class action in federal court, *Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847 (D. Minn. 1993). Mr. Lieder was also class counsel in *In re TV Writers Cases*, No. 268836 (Cal. Sup Ct. (Los Angeles Cty. 2011), a prominent age discrimination class action that settled for $70 million.

  44. M&S co-founder, Cyrus Mehri, served as co-lead counsel in several large race discrimination class actions, including: *Roberts v. Texaco Inc.*, No. 94-CIV-2015 (S.D.N.Y. 1997) (settled for $176 million and broad programmatic relief on behalf of African American employees); *Abdallah, et. al. v. Coca-Cola Company*, No. 1:98-CV-3679 (N.D. Ga. 2000) (settled for $192 million and broad programmatic relief on behalf of salaried African-American employees); *Robinson v. Ford Motor Co.*, No. 1:02-CV-844 (S.D. Ohio Aug. 1, 2005)(settled for $10 million and creation of over 270 apprenticeship positions for African Americans). He was also co-lead counsel in *Amochaev v. Citigroup Global Markets d/b/a Smith Barney*, No. C-05-1298 (N.D. Cal. Aug. 13, 2008) ($33 million settlement and injunctive relief to address gender discrimination in job opportunities and compensation), and in the following cases described above: *Augst-Johnson*, No. 1:06-CV-01142 (D.D.C.); *Norflet*, 3:04CV1099 (D. Conn.); *Carter*, No. 1:09-CV-01752 (D.D.C.); *Medicis*, No. l:13-cv01345 (D.D.C.).

45. Mr. Lieder and Mr. Mehri recently coauthored a chapter in a book on statistics for employment cases, Adverse Impact Analysis: Understanding Data, Statistics and Risk, edited by Scott B. Morris and Eric M. Dunleavy.

46. Lauren Nussbaum joined M&S in 2018. She has worked on various class matters representing plaintiffs in the civil rights and employment contexts, including a putative class of female employees who experienced a pattern of sexual harassment at Cook County Jail, *see Howard v. Cook County Sheriff's Office*, No. 1:17-cv-08146 (N.D. Ill.), a putative class of African American civilian employees of the New York Fire Department who experienced racial discrimination in promotions and compensation, *see Richardson v. City of New York*, No. 1:17-cv-09447 (S.D.N.Y.), and a putative class/collective of medical professionals alleging Fair Labor Standards Act and associated state wage and hour claims against Metropolitan Life Insurance Company, *see McNeely v. MetLife*, No. 1:18-cv-00885 (S.D.N.Y.). Prior to joining M&S, Ms. Nussbaum clerked for the Honorable Reggie B. Walton at the U.S. District Court for the District of Columbia.

***

47. In sum, I strongly support the class action settlement. Upon discussions with my colleagues and clients, it is my understanding that my co-counsel at M&S, A Better Balance, and the National Women's Law Center, and the Named Plaintiffs—Talisa Borders, Otisha Woolbright, and Stacey Lewis, also strongly support the class action settlement. The class settlement equals or succeeds a successful result if the case went to trial.

48. Finally, it is my observation that the Named Plaintiffs, Talisa Borders, Otisha Woolbright, and Stacey Lewis are committed to standing up for their peers who were pregnant while working at Walmart at any time between March 19, 2013 through March 5, 2014. They

believe that pregnant workers should be treated fairly, and they feel proud that by bringing this lawsuit they are helping other Walmart workers.

*I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of October, 2019, in the District of Columbia.*

_____
Ellen L. Eardley