# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BORDERS et al, )<br>On behalf of themselves and all others )<br>similarly situated, )<br> )<br>    Plaintiffs, )<br> )<br>v. )<br> )<br>WAL-MART INC., )<br>    Defendant. ) | Civil No. 3:17-cv-0506<br><br><br>CLASS ACTION |

**DECLARATION OF EMILY MARTIN**

Pursuant to Title 28 USC Section 1746, I, Emily Martin, hereby declare and state as follows:

1. I am over the age of eighteen years. I have personal knowledge of the facts set forth herein and am competent to testify thereto.

2. I am submitting this declaration on behalf of myself and my co-counsel in support of Plaintiffs' Motion for Preliminary Approval.

3. I am Vice President for Education and Workplace Justice at the National Women's Law Center (hereinafter "NWLC" or "the Center") and am proposed co-lead class counsel with other skilled attorneys and subject matter experts at NWLC. We are working alongside our trusted co-counsel at the firm Mehri & Skalet, PLLC and the non-profit organization A Better Balance.

4. NWLC was founded in 1972. We engage in legal and policy advocacy on behalf of women and girls across the country on issues of workplace justice, reproductive rights, health, education, and income security, with a particular focus on the needs of women of color and women in low-wage jobs. Pregnancy discrimination is a core focus of our workplace justice work.

1

5. Since its founding, the Center has played a leadership role in ensuring that pregnant workers are free from discrimination at work, including playing a lead role in advocacy to pass the Pregnancy Discrimination Act ("PDA") in 1978.

6. In 2012, NWLC, and I personally, played a leading role in drafting the Pregnant Workers Fairness Act ("PWFA"), a federal bill that would ensure that all employers provide reasonable accommodations to address limitations arising out of pregnancy. For the last seven years we have led federal advocacy to pass this bipartisan bill to ensure that pregnant workers can gain the accommodations they need in the workplace to work safely while pregnant. These efforts consist of dozens of meetings with legislative staff, including providing technical assistance in drafting and negotiations around bill language and organizing briefings for Congressional staff, as well as acting as subject matter experts responding to requests for information and guidance from House and Senate congressional offices and committees.

7. In 2013, I, along with my colleagues at NWLC and our proposed class co-counsel, A Better Balance, co-authored a groundbreaking report titled, "It Shouldn't Be A Heavy Lift: Fair Treatment for Pregnant Workers." *available at* https://nwlc.org/resources/it-shouldnt-be-heavy-lift-fair-treatment-pregnant-workers/. This report chronicled the challenges that pregnant employees face in seeking workplace pregnancy accommodations, laid out the legal landscape for pregnant workers, and outlined recommendations for federal agency guidance on pregnancy accommodations, as well as provided federal and state policy recommendations and measures employers should take to adopt fair accommodation policies for pregnant workers.

8. In the wake of the publication of this 2013 report, I, along with my colleagues at the National Women's Law Center and our proposed class co-counsel, A Better Balance,

presented on the topic of pregnancy accommodations and the current state of the law to the Women's Bureau of the U.S. Department of Labor. Our advocacy on the topic led the Women's Bureau to provide new information on its website on pregnancy accommodations.

9. Beginning in 2012, NWLC, and I personally, worked closely with the Equal Employment Opportunity Commission ("EEOC") in the creation of updated enforcement guidance addressing pregnancy discrimination, which was published in 2014 and updated in 2015. I provided invited oral testimony and multiple rounds of written testimony to the EEOC in 2012 addressing pregnancy accommodations under Title VII, which informed the guidance the agency ultimately provided on the topic. My colleagues and I at NWLC also similarly provided detailed comments and other input addressing pregnancy discrimination and pregnancy accommodations to the Office of Federal Contract and Compliance Programs of the Department of Labor, which informed the updated sex discrimination regulations applicable to federal contractors issued by the Department of Labor in 2016.

10. In addition to our federal advocacy, NWLC has been a leader in supporting state-level efforts to improve protections for pregnant workers across the country. We have worked with legislators and advocates providing research, drafting, and technical assistance and campaign support in jurisdictions including Connecticut, Delaware, the District of Columbia, Illinois, Maryland, Minnesota, Nebraska, New Jersey, North Dakota, Oregon, South Carolina, Vermont, Washington, and West Virginia, among others. During state legislative sessions, we are regularly called on to testify as experts in committee, and once a bill is passed, we often provide feedback and guidance as needed in establishing regulations and other enforcement efforts.

11. NWLC also engages in representation of pregnant workers and supports litigation on their behalf by filing amicus briefs to weigh in with our expertise on pregnancy discrimination matters. For example, in *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338 (2015), NWLC authored an amicus brief to the Supreme Court joined by 123 members of Congress, in support of Peggy Young's challenge to UPS's refusal to accommodate her medical needs during pregnancy, and played a coordinating role in the larger amicus effort in support of Peggy Young. The Young case established a legal standard that plaintiffs have relied on in part in this case.

12. My colleagues and I in the Workplace Justice team at NWLC are often called upon to join panels and presentations to speak as experts on pregnancy discrimination issues. Examples of such presentations in the last five years include: presenting on a webinar for retail workers across the country on their rights under the PDA, facilitating a "know-your-rights" training at a summit for Walmart workers in Illinois focused on pregnancy discrimination, coordinating and presenting a webinar for state lawmakers on state-level pregnancy accommodations bills, presenting at the Metropolitan Washington Employment Lawyers Association conference on the state of law regarding pregnancy discrimination and pregnancy accommodations post-*Young v. UPS*, presenting on an American Bar Association webinar addressing pregnancy discrimination, and presenting on a training webinar for legal services attorneys on pregnancy accommodations law.

13. NWLC also drafts and distributes widely-used educational materials to inform both policymakers and the public about the state of pregnancy discrimination law and related research. Most recently, in August 2019, we published a factsheet using data from the 2017 American Community Survey (ACS) 1- year estimates using IPUMSUSA and the U.S.

Department of Labor (DOL) O*NET OnLine Database to provide a landscape of where pregnant women work and what physical demands they face on the job. *See* Morgan Harwood & Sarah David Heydemann, NAT'L WOMEN'S LAW CTR, *By the Numbers: Where Do Pregnant Women Work?* (Aug. 12, 2019), https://nwlc.org/resources/by-the-numbers-where-do-pregnant-women-work/. This analysis was featured in an article in *The Nation* entitled, "The American Workplace Still Won't Accommodate Pregnant Workers." *See* Bryce Covert, *The American Workplace Still Won't Accommodate Pregnant Workers,* THE NATION (Aug. 12, 2019), https://www.thenation.com/article/pregnant-workers-discrimination-workplace-low-wage/.

14. In addition to our Center-wide subject matter expertise, my colleague Sunu Chandy and I have significant individual expertise in pregnancy discrimination and Title VII litigation, including in class cases.

15. I joined NWLC in 2009 and am a recognized national expert on pregnancy discrimination and accommodations law. I have been widely quoted in the media on issues relating to pregnancy discrimination and pregnancy accommodation, including in appearances on MSNBC and NPR, as well as in *The New York Times,* the *Washington Post*, the *Los Angeles Times, Fortune*, *ProPublica*, *Bloomberg*, *Cosmopolitan*, and *Politico*, to name a few examples. I lead NWLC's pregnancy discrimination work, including its federal and state advocacy and its litigation efforts.

16. Prior to joining NWLC, I served first as staff attorney and then as Deputy Director of the Women's Rights Project at the American Civil Liberties Union, from 2001 to 2009, where I spearheaded litigation, policy, and public education initiatives to advance the rights of women and girls, with a particular emphasis on the needs of low-income women and women of color. I also served as a law clerk for Senior Judge Wilfred Feinberg of the U.S.

Court of Appeals for the Second Circuit and Judge T.S. Ellis, III, of the Eastern District of Virginia.

17. I have experience representing women in individual and class sex discrimination cases. For example, I was lead counsel in *A.N.A., et al. v. Breckinridge County Board of Education*, Civil Action No. 3:08-cv-00004-CRS, a class action challenging sex segregation in a public middle school in Kentucky filed in U.S. District Court for the Western District of Kentucky. I also served on the team of attorneys for plaintiffs in *Lochren v. Cty. of Suffolk*, No. CV01-3925 ARL, 2010 WL 1207418 (E.D.N.Y. Mar. 23, 2010), a case in U.S. District Court in the Eastern District of New York that successfully challenged a Suffolk County Police Department policy excluding pregnant police officers from light duty.

18. My colleague at NWLC and another attorney on this matter, Sunu Chandy, joined the Center as its Legal Director in August 2017. She currently oversees Center-wide litigation efforts, including amicus briefs.

19. Before joining NWLC, she worked primarily as a civil rights attorney in various capacities for the past 20 years. Immediately prior to joining the Center, Ms. Chandy served as the Deputy Director for the Civil Rights Division with the U.S. Department of Health and Human Services overseeing a team of about 20 individuals, and before that she served as the General Counsel of the District of Columbia Office of Human Rights (OHR). At OHR she and her team oversaw agency decisions following investigations of discrimination in employment, education, housing and public accommodation matters.

20. From 1999 to 2014, Ms. Chandy served as a federal attorney with the EEOC in its New York district office, where she litigated class civil rights employment matters including on behalf of employees discriminated against based on sex, race, national origin, disability, age,

6

and religion. Ms. Chandy has also served as a legal consultant to the Ms. Foundation for Women and started her legal career representing unions and workers at a union-side labor law firm.

21. In several of the above-mentioned roles Ms. Chandy worked to enforce federal and local laws that prohibit sex discrimination, including on the basis of pregnancy. Her work in this area spanning the last 20 years has included supervising EEOC investigators on matters of pregnancy decisions, litigating small and large cases involving pregnancy discrimination, and overseeing investigations and draft resolutions of agency findings by the District of Columbia Office of Human Rights in matters of pregnancy discrimination.

22. For example, in *EEOC v. Princeton HealthCare System*, Civil Action No.:3:10-cv-04126 in U.S. District Court for the District of New Jersey, Ms. Chandy was on the team of attorneys that secured policy changes and financial relief of $1.35 million in a large matter of disability related discrimination that also included women who were pregnant and not provided leave as a reasonable accommodation. The resolution of the case ensured that, in line with the law, the Defendant was required to engage in an interactive process with covered employees including employees with a disability related to pregnancy, when deciding how much leave is needed as an accommodation.

23. While at EEOC, Ms. Chandy was lead counsel in dozens of class cases, including on cases challenging sex harassment, racial harassment, age discrimination, religious discrimination, national origin-based discrimination, and all other areas of federal civil rights workplace protections. She was also on the team of attorneys in multiple cases challenging systemic workplace discrimination in a host of sectors, including class counsel for employment discrimination class actions, such as settling a $54 million settlement in a sex discrimination case on behalf of a class of female Morgan Stanley officers and women eligible for officer

promotion in Morgan Stanley's Institutional Equity Division, and a $2.5 million settlement in a sexual harassment and retaliation lawsuit on behalf of 89 female employees of the world's largest Burger King franchise, Carrols Corporation.

24. An additional attorney on this matter, Sarah David Heydemann, joined the National Women's Law Center as Legal Fellow for Education and Workplace Justice in September 2017. She was promoted to Senior Counsel for Education and Workplace Justice in July 2019. In her role as Legal Fellow and now as Senior Counsel, she is engaged in NWLC's federal advocacy on the Pregnant Workers Fairness Act (PWFA), corresponding with House and Senate offices on substantive legal questions related to pregnancy accommodations and creating "know-your-rights" documents, webinar presentations and other educational materials on pregnancy discrimination. She also assists in NWLC's state-level PWFA work, drafting testimony for state hearings and providing technical assistance to lawmakers. Before joining NWLC, Ms. Heydemann practiced union-side labor and employment law at a firm representing unions and individual workers in litigation in state and federal court as well as in administrative hearings.

25. I have been engaged with the matter at hand since its inception in 2014. Weighing the parties' extensive litigation efforts as well as the potential for the litigation to continue for years to come, with the interests of our clients in coming to a timely and satisfactory resolution, I believe this proposed settlement represents an excellent outcome for the classes and easily meets the "fair, reasonable, and adequate" legal standard required for Court approval.

26. We have carefully crafted the claim form to reach the maximum number of potential class members through several means of communication, keeping in mind the precarity

that low-wage workers often face in housing and access to consistent internet and phone service. Further, we have drafted the claim notice at a 9th grade readability level and made thoughtful attempts to simplify the instructions for members of the classes to submit claim forms.

27. We believe class members will attain relief in light of the component payments jointly agreed to in the proposed settlement, including back pay, compensatory damages in recognition of suffering class members incurred, and other financial damages and expenses incurred by class members such as costs for medical care.

28. All pregnant workers deserve dignified workplaces where they have access to accommodations that will allow them to continue to work safely while pregnant. We are hopeful that this proposed settlement helps to bring workplaces across the country in line with this goal.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of October, 2019, in the District of Columbia.

_____
Emily Martin